## TROY WAGON WORKS v. VASTBINDER.

(District Court, M. D. Pennsylvania. May 19, 1904.)

No. 366.

1. BANKRUPTCY—ACT OF BANKRUPTCY—EVIDENCE.

On an issue as to the commission of an act of bankruptcy by transferring notes with intent to give a preference, statements in the contract under which goods were furnished to the alleged bankrupt that he took the same for sale on commission, the notes to belong to the party to whom they were transferred, are not conclusive where the whole contract, taken together, shows that defendant became obligated to pay the invoice price of the goods, and the notes were taken in his name and indorsed by him.

2. SAME—INVOLUNTARY PROCEEDINGS—ISSUES.

Where the act of bankruptcy charged in an involuntary petition was the giving of a preference while insolvent, a denial in the answer that defendant committed such act of bankruptcy must be construed as a denial

of insolvency, at least where it has been so accepted by the petitioners and evidence taken on the issue.

**3.** SAME—PROOF OF INSOLVENCY.

    Evidence examined, and *held* insufficient to show insolvency at the time of the commission of the act of bankruptcy alleged.

In Bankruptcy. Involuntary proceedings. Hearing on petition, answer, and proofs. See In re Vastbinder, 126 Fed. 417.

N. H. Ryan and E. H. Owlett, for petitioners.
David Cameron, for respondent.

ARCHBALD, District Judge. These are involuntary proceedings begun by creditors, the only act of bankruptcy sufficiently charged being that the respondent, within four months next preceding the filing of the petition, transferred, while insolvent, good and collectible promissory notes, to the value of $500, to Charles H. Childs & Co., with intent to prefer them above his other creditors. The respondent contests the proceedings, and denies that he made any such transfer of notes "then held and owned by him"—an argumentative denial, as will appear by the sequel—or that he transferred any such notes with intent to create a preference. He also declares, in general terms, that he did not "at any time commit any act of bankruptcy alleged in the petition." It is, however, the conceded fact that, within a short time prior to the institution of the proceedings, he did transfer to Childs & Co. a number of promissory notes for the purpose of closing his account with them, and, whether this was done with the express intent of preferring them or not, it had that effect, and must be presumed, if the notes were his, to have been so intended. The transfer is sought to be justified on the ground that the existing relation between the parties was one of agency only, the respondent merely taking the goods to sell on account, and turning over the proceeds after deducting his commission. Written orders on Childs & Co. are produced to verify this, signed by the respondent, in which he declares that he so receives and holds them; but this is materially qualified by the other evidence, and the court will go behind mere forms to get at the real transaction. Indeed, the orders themselves—aside from the fine print at the bottom—bear on their face the proof that they represent actual purchases, and not consignments. The goods are disposed of to the respondent for a specific price, and on definite terms of credit, with provision on most of them for a discount if paid within a certain time. And while it may be true, as stated by the respondent, that he was only required to pay for each lot as fast as he disposed of it, accounting to Childs & Co. for whatever he received in the way of notes or other securities, yet in making sales he did so in his own name, and was held directly responsible, the securities obtained being taken to himself personally, and guarantied by him when they were turned over. His obligations to Childs & Co. were plainly regarded as a debt, and he so speaks of them in his testimony. There are too many indicia in this of an ordinary purchase to warrant the conclusion that anything else was in fact intended. Childs & Co. must therefore be held to be creditors like the rest, and the notes, which he turned over to them, his own, notwithstanding his assertion to the contrary in his answer.

But it is essential to a preference that the debtor should have been insolvent at the time, and unless this appears there is no act of bankruptcy. It is claimed, however, by the petitioners that insolvency is not denied in the answer, and that it is not therefore put in issue. It must be confessed that the answer in this respect is not all that could be wished for, and that the denial of insolvency, at best, is inferential. It is to be found, if at all, in the general averment that no act of bankruptcy such as is charged has been committed. This, argumentatively at least, is a denial of whatever enters into the act relied on, including in the present instance the insolvency of the respondent. The petitioners evidently so regarded it, for they went on and took extended proofs on the subject, to which the respondent on his part made reply, and, the issue having been accepted in this way, it hardly lies in their mouth to now question it when the case is before the court upon the merits.

There is a wide difference between counsel as to the extent of the respondent's indebtedness at the time of the alleged preference as shown by the evidence; but while neither side has worked it out exactly right, it by no means amounts to what is claimed for it on the part of the petitioners. On the contrary, a careful examination of the evidence has convinced me, that, disallowing the $479 paid to the Troy Wagon Works, which evidently went to meet a bill not now brought forward, and including an estimated indebtedness to Childs & Co., still remaining, of $200 or $300, the most that can be figured is $3,500 in round numbers. On the other side of the account, as available assets to meet these liabilities, are, first, the respondent's stock of farming implements, valued at $3,000 to $3,500, outside the goods obtained from Childs & Co., which must be counted in, and amount to some $200 or $300 more; next, the leases and securities turned over to Mr. Broughton to collect for the benefit of creditors, which have a conceded value of $1,000, on a face value of $4,000; and, besides this, the property at Elmira, which was put in the hands of D. R. Thomas for sale, worth $1,500 or $1,600; making an aggregate of from $5,700 to $6,400 in all. On the highest of these estimates, which is not extravagant, there is a margin of $2,900 above liabilities, and on the lowest there is $2,200, the respondent being clearly solvent whichever one is taken. And even if the property at Elmira be thrown out, on the ground that it had been put out of his hands by the respondent for the purpose of defrauding creditors—of which I am far from persuaded—enough would still remain to produce the same result.

It will be noticed that this consideration of the case is based upon the evidence produced, without regard to who has the burden. It is claimed that it was upon the petitioners, on the ground that the respondent appeared at the hearing with his books and papers and submitted to an examination, fulfilling the requirements of the law, which thereupon relieved him from proving his solvency. But, on the other hand, it is said that the production was not voluntary, having been enforced by a subpœna duces tecum and the order of the referee, and that the respondent is not therefore entitled to the benefit otherwise to be accorded it. Also, that he was not frank in his disclosures, and that only after the closest inquiry, and at the very end of his examination, did he tell anything about the securities which he had put in the hands of Mr.

Broughton, or the property that had been taken to Elmira. Furthermore, that his accounts were incomplete, confused, and unsatisfactory, and afforded no material aid in getting at his true condition. But without stopping to discuss either of these contentions, I base my disposition of the case upon the undisputed evidence upon which it can be safely made to rest. Convinced by it as I am, of the solvency of the respondent, the proceedings are dismissed.