## AETNA LIFE INS. CO. v. BOARD OF COUNTY COM'RS OF HAMIL-TON COUNTY.

(Circuit Court of Appeals, Eighth Circuit. March 1, 1897.)

### No. 834.

1. TRIAL TO THE COURT—SPECIAL FINDINGS.

It rests in the discretion of a court to which a case is submitted without a jury to make a general finding, instead of special findings. The finding may be as general as the verdict of a jury, and have the same effect.

2. COURTS—POWER OVER JUDGMENT DURING TERM.

The court has full power over its judgments and orders to vacate them or correct them, on its own motion, during the same term; and the vacating of a judgment at the same term, because inadvertently entered, leaves the case as if the inadvertent judgment had never been entered.

3. TRIAL—SUBMISSION OF CASE—DISMISSAL WITHOUT PREJUDICE.

When the evidence is presented, the arguments made, and the case taken under advisement, this is a submission of the case; and the right of plaintiff to have the action dismissed without prejudice then ceases. Such dismissal cannot thereafter be made without the permission of the court in its discretion.

4. SAME.

The court may announce its findings in open court, and have them entered on the record, as well as to write them out and file them.

In Error to the Circuit Court of the United States for the District of Kansas.

This action was brought in the United States circuit court for the district of Kansas, Second division, to recover the amount of a large number of overdue coupons, pertaining to two issues of funding bonds of Hamilton county, Kan. One of such issues, of 20 bonds for the sum of $1,000 each, purported to have been made on May 7, 1887, at Kendall, in said county, under the seal of the county, and to be signed by J. M. Neeland, chairman of the board of county commissioners, and attested and registered by J. M. Hicks, county clerk, by John S. Speer, deputy, and made payable at the fiscal agency of the state of Kansas in the city of New York, upon May 7, 1917. The other issue, of 40 bonds of like amount, purported to have been made on May 16, 1888, at the same place, under the seal of said county, and to be signed by C. H. Griffith, chairman of the board of county commissioners, and by James M. Hicks, county clerk, and were made payable at the said fiscal agency on May 1, 1918. Interest coupons were attached to the bonds of both issues for the semiannual interest at the rate of 6 per cent., payable at said fiscal agency. Those pertaining to the first issue matured on the 1st days of February and August; and those pertaining to the last issue, on the 1st days of January and July of each year. The bonds, upon the face thereof, contained a reference to the statute under which they purported to have been issued, and full recitals of compliance with all requirements precedent to their issue, and appeared to be regular and valid, and it was not disputed that the plaintiff was a bona fide holder, for value, of the bonds and coupons, without notice of any infirmity or defect. The defense pleaded and relied upon at the trial by the court (jury trial having been duly waived) was that the persons acting as, and assuming to be, the board of county commissioners of said county, and holding their meetings at Kendall during the time from April, 1887, until after June, 1888, and of which Neeland and Griffith successively claimed to be chairman, did not constitute, and were not during that time, the legal board of county commissioners of said county of Hamilton, and had no right to act as such, nor any authority to issue any such bonds; and hence that said bonds were not valid obligations of said county of Hamilton.

From the agreed statement of facts presented on the trial, it appears that Hamilton county was organized by a proclamation of the governor, January

29, 1886, designating Kendall as the temporary county seat, and appointing a temporary board of county commissioners and county clerk; that an election was called for April 1, 1886, to permanently locate the county seat and elect county officers; and that, upon canvass of the votes, it was declared that Syracuse was selected as such county seat, and thereupon the board of county commissioners removed their sessions to Syracuse. Later, in October, 1886, it was determined by the supreme court of Kansas that no town had been selected at said election as the permanent county seat. and that Kendall remained the temporary county seat. The question of locating the permanent county seat was again submitted to the voters of the county at the general election in November, 1886, and, upon a canvass of the votes. the election was again declared to have resulted in favor of Syracuse. This decision was not acquiesced in, and still another election to determine the selection of the permanent location of the seat of said county was held June 20, 1888, and Syracuse again declared to have been selected. On November 9, 1888, the supreme court of Kansas duly determined that the city of Syracuse was duly selected as such county seat at the election last referred to.

It is needless to follow in this statement, with particularity, the details of this prolonged dispute about the county seat of Hamilton county, and the attendant litigation. One result was that, from the beginning of the dispute, some of the commissioners, holding that Kendall continued to be the county seat, held their meetings there, and filled as vacancies the places of such as did not meet at that place. Other commissioners, holding that Syracuse was the county seat, met there, and filled the alleged vacancies in the same manner; so that during the most of the years 1887 and 1888 there were two full boards of county commissioners, one meeting at Kendall, the other at Syracuse, each assuming and transacting the business of the county, and claiming to be the only legal board. On the trial of the case, the court found generally for the defendant.

F. P. Lindsay (W. C. Webb and O. J. Bailey with him on brief), for plaintiff in error.

George Getty (C. N. Sterry with him on brief), for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and LOCHREN, District Judge.

LOCHREN, District Judge, after stating the case as above, delivered the opinion of the court.

1. It rested in the discretion of the court to make a general finding, instead of special findings. The finding might be as general as the verdict of a jury, and have the same effect. Rev. St. U. S. § 649; City of Key West v. Baer, 13 C. C. A. 572, 66 Fed. 440.

2. The judgment entered on June 3, 1895, having, as appears by the statement of the judge, been inadvertently ordered to be entered, was properly, upon the judge's own motion, three days later in the same term, set aside and held for naught. The court had full power over its judgments and orders to vacate them or correct them during the same term. Ex parte Lange, 18 Wall. 163; Goddard v. Ordway, 101 U. S. 752. The vacating of the judgment at the same term, because inadvertently entered, left the case as if said inadvertent judgment had never been entered.

3. The transcript shows (page 92) that the evidence was presented to the court, the arguments made, and the case taken under advisement by the court on December 13, 1894. This was a submission of the case to the court, and the right of the plaintiff to have the action dismissed without prejudice then ceased. Such dismissal thereafter

could not be made without permission of the court, in its discretion. Code Civ. Proc. Kan. § 397; Mason v. Ryus, 26 Kan. 466.

4. The memorandum of Judge Riner, filed June 3, 1894, was, in substance, a general finding in favor of the defendant; but, if that finding was defective in form, the general finding set forth in the record of December 4, 1895, which was made when Judge Riner was on the bench, and which includes the ruling of the court upon the plaintiff's motion to dismiss, was a sufficient general finding in the case in favor of the defendant, and the judgment thereupon was full and complete. The court might announce its findings in open court, and have them entered on the record, as well as to write them out and file them. The submission of the cause to the judge continued until the case was finally decided and judgment entered.

5. There are no exceptions in the case in respect to evidence offered or admitted. It does not appear that any evidence offered on behalf of the plaintiff was excluded, or that objections on the part of the plaintiff to evidence offered by the defendant were called to the attention of the court by any request for a ruling thereon. Even in this record it is not indicated to what evidence the objections could have been pertinent. An objection, on whatever grounds, to "sundry records and books," etc., and to "oral and written testimony tending to establish all and every of the matters," etc., is uncertain and meaningless. The judgment is affirmed.