## In re NEW CHATTANOOGA HARDWARE CO.

(District Court, E. D. Tennessee, S. D.  August 23, 1911.)

### No. 1,354.

1. BANKRUPTCY (§ 39*)—VOLUNTARY PROCEEDINGS—EFFECT OF PENDING INVOLUNTARY PETITION.

Whether a court of bankruptcy should proceed under a voluntary petition of a debtor or a pending involuntary petition against him is not a question of jurisdiction or of right in the parties, but one of practice, and the adjudication should be made in the proceeding which under all the circumstances appears to be for the best interest of the entire estate. As a general rule, it should be made in the voluntary case, with proper protection to the rights of prior petitioning creditors as quicker, less expensive and less likely to lead to expensive litigation, and the court is not precluded from acting under such rule by the fact that the debtor may have appeared and participated in the involuntary proceeding under such circumstances as might ordinarily create an estoppel if his own interests alone were involved.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 39.*]

2. BANKRUPTCY (§ 51*)—ADJUDICATION—PENDENCY OF VOLUNTARY AND INVOLUNTARY PROCEEDINGS.

An adjudication on a voluntary petition in bankruptcy will not necessarily render void the appointment of a receiver in prior involuntary proceedings, but all rights under such proceedings, including liability for costs and expenses, may be fully protected by order of the court.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 51.*]

In the matter of New Chattanooga Hardware Company, bankrupt. On certificate of referee. Adjudication ordered.

Wilkerson & Wilkerson, for petitioner.

SANFORD, District Judge. This is a petition for voluntary bankruptcy filed by the New Chattanooga Hardware Company. The judge being absent, it was referred by the clerk to the referee in bankruptcy. The petitioning creditors in an earlier petition against the hardware company for involuntary bankruptcy have moved to stay an adjudication under this voluntary petition until action is had on their involuntary petition. The referee in accordance with the practice followed in Re Stegar (D. C.) 113 Fed. 978, has certified this motion for instructions.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

190 F.—16

The situation in reference to the administration of the estate of this admittedly insolvent corporation, as it appears from the pleadings in this case and in two other cases pending against it in this court, of which the court will take judicial notice, is as follows: On July 10, 1911, the First National Bank of Chattanooga and two other creditors, having claims aggregating in excess of $2,648, filed an involuntary petition against the hardware company in bankruptcy cause No. 1,339, alleging it to be a corporation organized for and engaged in the mercantile business, and praying for its adjudication as a bankrupt and for the appointment of a receiver. The only act of bankruptcy alleged was that it had on July 7, 1911, paid H. Boker & Co., one of its creditors, the sum of $73.25, "the same being an unlawful preference to creditors." There was, however, no averment that the hardware company was insolvent at the time this payment was made. The averment of an act of bankruptcy therefore was clearly insufficient. Section 3a (2), Bankr. Act July 1, 1898, c. 541, 30 Stat. 546 (U. S. Comp. St. 1901, p. 3422); In re Hammond (D. C.) 163 Fed. 548. And see In re Rome Planing Mills (D. C.) 96 Fed. 812; Troy Wagon Works v. Vastbinder (D. C.) 130 Fed. 232; Remington on Bankruptcy, 1342, p. 785. Neither did the petition allege in terms that this payment was made by the bankrupt with intent to prefer Boker & Co. over other creditors. See section 3a (2) of the bankruptcy act; In re Rome Planing Mills, supra; In re Gilbert (D. C.) 112 Fed. 951; In re Tupper (D. C.) 163 Fed. 766; Collier on Bankruptcy (8th Ed.) p. 72. Neither did the petition aver that the appointment of a receiver was "absolutely necessary" for the preservation of the estate (section 2 [3] of the bankruptcy act), but merely that "great loss" would occur to the creditors unless a receiver was appointed. The petition, furthermore, was verified by only one of the petitioning creditors. See Official Forms in Bankruptcy, No. 3 (89 Fed. xxviii, 32 C. C. A. lii).

On the same day the hardware company, by its treasurer, in writing, acknowledged notice of the filing of this petition, admitted its insolvency, consented to the appointment of a receiver as prayed, and waived an indemnity bond on account of such appointment. The case having been referred by the clerk to the referee in the absence of the judge, the referee on the same day made an order adjudging that the appointment of a receiver was "absolutely necessary" for the preservation of the estate of the defendant, and appointing a receiver (who appears to be a large creditor), under $10,000 bond, with authority to take immediate charge of its assets and to collect its accounts. This receiver at once qualified and entered upon the discharge of his duties. On July 25th A. C. Bickhaus, C. L. Anton, and another creditor, having claims aggregating $533.31, filed a second involuntary petition in bankruptcy against the hardware company in cause No. 1,443, duly alleging acts of bankruptcy on the part of the company in making, while insolvent, payments to four of its creditors of $128.50, $10.61, $34.76, and $52.16, on March 28, April 13, May 18, and May 25, 1911, respectively, with intent to prefer them over other creditors. On the same day, the Burrows Lock Company and

two other creditors, having, it appears, claims aggregating $498.79, entered their appearance in cause No. 1,339, and demurrer to the petition therein, on the ground that it failed to sufficiently allege an act of bankruptcy or to show cause for the appointment of a receiver, and for various other grounds. On the same day the Standard Oil Company and two other creditors, having, it appears, claims aggregating $359.36, likewise entered their appearance in cause No. 1,339, and moved to discharge the receivership therein for want of sufficient jurisdictional averments. On July 27th the petitioning creditors in cause No. 1,339 petitioned for leave to amend their original petition by permitting it to be verified by all the petitioning creditors, by specifically alleging that the payment to Boker & Co. was made while the hardware company was insolvent, and with intent to prefer said creditor over other creditors, by alleging a similar act of bankruptcy in making a payment of $90.45 intended as a preference to another creditor on March 15, 1911, and by making further allegations as to the necessity for the appointment of a receiver; and they also moved to strike from the files the motion of the Standard Oil Company and others to discharge the receivership. And on the same day they also moved to strike from the record the involuntary petition filed by Bickhaus and others in cause No. 1,343, on the ground that the court had acquired prior jurisdiction in cause No. 1,339. On July 29th the defendant hardware company, by attorney, moved, in cause No. 1,339, to strike from the files the petition of the Standard Oil Company and others, and in cause No. 1,343 to strike from the files the second involuntary petition that had been filed against it by Bickhaus and others. On August 3d the Standard Oil Company and the other two creditors associated with it entered their appearance in opposition to the amendment sought to be made to the original involuntary petition in cause No. 1,339, and demurred thereto on the ground that as the original petition did not allege an act of bankruptcy on the part of the hardware company, nor allege that it was a moneyed and business corporation, and not an insurance, municipal, railroad, or banking corporation (see section 4 of the bankruptcy act as amended by section 3, Act June 25, 1910, c. 412, 36 Stat. 839; In re Bellah [D. C.] 116 Fed. 78), no jurisdiction had been acquired thereunder, and it was not subject to amendment, and upon various other grounds. On the same day, C. L. Anton, one of the petitioning creditors in cause No. 1,343, and 16 other creditors having claims aggregating $6,145.38, entered their appearance in cause No. 1,339, and filed an answer to the original petition, denying that its averments were sufficient to confer jurisdiction, resisting the amendment thereto, and charging, on information and belief, that the petition and amendment were filed and being prosecuted by collusion between the hardware company, the First National Bank and the receiver, and in their mutual interest.

On August 9th the petitioning creditors in cause No. 1,339 filed another petition therein, praying leave to further amend their original petition by specifically alleging that the hardware company was a business and commercial corporation, and not a municipal, railroad,

insurance, or banking corporation, and by making averments as to the necessity for the appointment of a receiver to take charge of certain assets of the Dayton branch of the hardware company; and on the same day they also moved to strike from the files the demurrers of the Burrows Lock Company and others, and the Standard Oil Company and others, for want of proper verification. On the same day the hardware company filed in cause No. 1,339 a schedule of its assets and liabilities signed and verified by its president. On the same day the First National Bank and the receiver filed in cause No. 1,339 a "special replication" to the answer of Anton and others, denying, under oath, fully and particularly as false and without foundation the averments of collusion between themselves and the hardware company. On August 11th the hardware company filed its voluntary petition in bankruptcy in the present cause No. 1,354. This petition was verified by its president, and alleged that its filing was authorized by a resolution adopted that day by its board of directors reciting the pendency of the two involuntary petitions, the possibility of a long drawn-out contest over their legality, and "that the affairs of the company ought to be wound up," and directing the president to file a petition in voluntary bankruptcy for that purpose. The schedule attached to the petition, which is substantially the same as that previously filed in cause No. 1,339, shows total assets of $42,413.04, including a stock of merchandise of the invoiced value of $17,576.94 and accounts on persons not in bankruptcy of the par value of $15,-878.09, and total liabilities of $43,743.46, including unsecured debts other than wages and taxes, aggregating $42,067.02, due to about 200 different creditors. On the same day this voluntary petition was, in the absence of the judge, referred by the clerk to the referee.

On August 14th the petitioning creditors in cause No. 1,339 moved that the adjudication prayed in the voluntary petition be stayed until after action should be had by the court on their pending involuntary petition, and that, if adjudication should be had in said involuntary cause, the voluntary petition be then dismissed. The grounds of this motion were: (1) That the hardware company had submitted to the jurisdiction of the court in the involuntary cause No. 1,339 by acknowledging notice of the filing of the petition, admitting insolvency, consenting to the appointment of a receiver and waiving bond, and was thereby estopped from seeking a voluntary adjudication; (2) that the hardware company, since submitting to the jurisdiction in said involuntary petition, had sent circular letters to all its creditors, offering a composition settlement, and that the voluntary petition was intended solely for the purpose of securing a speedy action touching such composition, and was wholly in the interest of the hardware company, and not in the interest of creditors; and (3) that any adjudication in the voluntary case would render null and void the appointment of a receiver and other steps taken in said voluntary cause. On the same day the hardware company answered this motion, denying that it had submitted to the jurisdiction of the court in cause No. 1,-339 or any other involuntary proceeding, and alleging that the action taken in its name by its treasurer in cause No. 1,339 was without au-

thority, and had never been adopted or approved by the company, and that it had never taken any corporate action as to bankruptcy except when on August 11, 1911, it determined, by proper authority, to go into voluntary bankruptcy; (2) that the letters offering composition set out in the motion were likewise sent out without corporate authority; and (3) that it is manifestly for the interest of creditors that the affairs of the company be administered and wound up under the voluntary petition without the delay and costly litigation which will result under the two conflicting and litigated involuntary petitions pending against the company. There was filed as an exhibit to this answer the affidavit of its treasurer to the effect that he signed the written confession of insolvency at the request of the attorney for the petitioning creditors; that he did this without any corporate authority and without the knowledge or consent of the board of directors and stockholders; and that as treasurer under the by-laws he had no authority to sign such instrument.

The petitioning creditors in cause No. 1,339 thereupon moved to strike this answer from the files upon various grounds, among others, that the action of the treasurer in cause No. 1,339 was within his official authority, and did not require sanction of the board of directors; that the answer did not deny knowledge by the board of directors of the proceedings taken by its treasurer on behalf of the company in said involuntary cause, and the company was estopped by acquiescence therein to question the authority of its treasurer; and that the company could not collaterally attack in the voluntary case the authority exercised by its treasurer and other officers in the involuntary case in the manner above set out, and in the actual filing of schedules therein.

In this state of the pleadings the referee has certified to me the action of the petitioning creditors in cause No. 1,339 to deny an adjudication in the voluntary cause No. 1,354 for my opinion and instructions.

[1] 1. The principles which should govern a court of bankruptcy in determining whether an adjudication should be made upon a voluntary petition, or upon a pending involuntary petition previously filed, and the practice which should be followed, have been carefully considered in the cases of In re Dwyer (D. C.) 112 Fed. 777, and In re Stegar (D. C.) 113 Fed. 978.

In the Dwyer Case, supra, it was said by Judge Amidon that the question whether the adjudication shall be made under the voluntary or the involuntary petition is not one of jurisdiction, but a mere matter of practice, to be disposed of as shall seem for the best interest of the estate; that "the consideration which should guide the court in adopting the one course or the other is the welfare of the estate"; that, on the one hand, the bankrupt has no right to take any proceeding which will defeat a just application of his estate in accordance with the bankruptcy act, and, on the other hand, creditors who have filed an involuntary petition cannot properly insist that the rights of all creditors shall be prejudiced in order that a full hearing may first be had upon their petition; that, while the bankrupt in defense of

his good name has the right to resist an adjudication under an involuntary petition charging fraudulent conduct, yet as issues of that character frequently take months for their determination; if no voluntary petition could be instituted until their determination, the estate might easily be seriously prejudiced by liens which by reason of the four-month limitation of the bankruptcy act could not then be assailed; and that the proper practice would seem to be that, upon the filing of the voluntary petition, notice should be given to the petitioning creditors under the involuntary petition before any adjudication is made upon the voluntary petition, and such action should be then taken as the hearing shows to be for the best interest of the estate; and, since in the case before him the petitioning creditors had come before the court and made a showing fairly indicating that under an adjudication upon the voluntary petition a large portion, if not all, of the property of the estate might pass beyond the trustee's power of recovery by the expiration of the four-month limitation, he held that proceedings under the voluntary petition should be stayed until the disposition of the involuntary petition, although the voluntary petition should remain on file, so that under section 60 of the bankruptcy act the running of the four-month limitation might be stopped in case the involuntary petition should be finally decided in favor of the bankrupt.

In the Stegar Case, supra, in which the defendant had not appeared in the involuntary proceeding, and no action had been taken therein at the time the voluntary petition was filed, it was said by Judge Jones that ordinarily a debtor has the right to avail himself of the benefits of the bankrupt law on his own petition, and this right cannot be forfeited or rendered ineffectual merely because the creditors' petition is first filed and pending undetermined when the debtor files his petition; that the debtor has the undoubted legal right to contest the involuntary proceeding, which must necessarily be based upon some violation of the act, of which he may not be guilty, and is therefore unwilling to be adjudged guilty, although desirous to have his estate distributed among creditors on his own petition, and that he is not bound to postpone this right because of the involuntary proceeding, and may, unless he has waived the right, push his own proceeding, and at the same time contest the creditors' proceeding; that as the object of the law in giving a creditor the right to force his insolvent debtor into bankruptcy is to compel the just distribution of the insolvent's estate among his creditors, if the petitioning creditors obtain this result, they cannot complain, so long as their rights are fully protected, that the distribution, instead of being effected on their petition, is accomplished upon the voluntary petition of the debtor; that ordinarily adjudication on the debtor's own petition is the better mode, since it is quicker, less expensive, and less likely to lead to delay and unnecessary litigation; that nothing, so far as then appeared, would be gained by adjudication on the involuntary proceeding which could not be had on an adjudication under the voluntary petition; that the estate, if administered under the involuntary proceeding, would be burdened by cost, expense, and useless litigation, which would be avoided if adjudication passed on the voluntary proceeding, while, on the other

hand, if the involuntary petition should be defeated, nothing would be affected except profitless litigation and delay, and it might be, damage to creditors; that manifestly, therefore, it was not to the advantage of creditors to press the involuntary proceeding further, unless it should become necessary to enforce some right which could not be saved under adjudication on the voluntary petition; that, however, since creditors, by commencing an involuntary proceeding, incur liability for costs and attorneys' fees, and, if the petition be wrongfully filed, for damages, and also get in position to avoid preferences and transfers which might not be assailable on the adjudication under the later voluntary petition, the court could not deprive the petitioning creditors of these rights, or enlarge their liabilities by dismissing the prior involuntary proceeding in order to administer the estate under the voluntary petition; that these rights of the petitioning creditors should hence be saved if they were not allowed to proceed, and the administration of the insolvent estate be had under the insolvent's voluntary petition; that, however, as a debtor who, without appearing in an involuntary proceeding, subsequently files a voluntary petition, upon which he is adjudged a bankrupt, cannot complain of the filing of the involuntary petition, this liability being out of the way, it only remained to save the creditors harmless as to costs and attorney's fees; that this might easily be effected by directing an adjudication on the voluntary proceedings, staying the involuntary proceeding in the meanwhile, and reserving to petitioning creditors the right to prove their costs and expenditures under the adjudication on the voluntary petition, with leave to bring forward the involuntary petition if subsequently it might be found necessary to protect rights which could not be saved by adjudication under the voluntary petition, and with further leave to creditors to prove their claims under the adjudication on the earlier involuntary proceeding, if it became necessary to bring it forward, notwithstanding such claims might have been proved, or dividends might have been accepted, in the proceedings on the voluntary petition; and that such decree, within the undoubted power of the court of bankruptcy to mold its decrees upon the two petitions in as broad and flexible a manner as a court of equity, would amply secure every possible right of the petitioning creditors; and it was accordingly held that an adjudication should be made under the voluntary petition and the proceeding stayed in the involuntary case, with provisions for the protection of the rights of the petitioning creditors of the general character indicated.

I entirely agree to the opinion expressed in the Stegar Case that ordinarily adjudication made under a voluntary petition is the better mode, as quicker, less expensive, and less likely to lead to delay and unnecessary litigation, and think that, in case of conflicting petitions, the adjudication should, as a general rule, be made in the voluntary case, with proper protection to the rights of prior petitioning creditors. However, I likewise fully concur in the doctrine so clearly and forcibly stated in the Dwyer Case that the question is, after all, not one of jurisdiction, but one of practice, and that neither party has a fixed and inflexible right to a prior adjudication under either petition, but that

the adjudication should be made in such proceeding, as, under all the circumstances, appears to be for the best interest of the entire estate. And, since under the doctrine of that case the controlling consideration which should guide the court in adopting the course to be pursued is "the welfare of the estate," I cannot agree, without qualification, to the view suggested obiter in the opinion in the Stegar Case, that the debtor should by a prior participation in the proceedings in the involuntary case be deemed to have so waived his right to proceed with a voluntary petition that an adjudication should be necessarily denied thereunder. If the debtor's own interests were alone involved, I should unreservedly agree to the statement in that opinion (at page 980 of 113 Fed.) that there might be cases in which the debtor, after going so far as to begin the trial of the issues on an involuntary petition, should properly be held to have waived his right to subsequently proceed upon his voluntary petition until the involuntary petition has been heard and determined. But since, in a case of this character, the right of creditors to a prompt and economical administration of the estate is also involved, I think that the debtor's previous conduct should not be made the sole criterion, but that the choice of the proceeding in which the adjudication should be made, should, in the last analysis, after giving due weight to all the circumstances, including the extent to which the proceedings have gone in the involuntary case, be controlled, as stated by Judge Amidon, by that which appears to be for the best interest of the estate to be administered. And, while it may well be that in many cases the advantage there would otherwise be in making the adjudication in the voluntary case is so slight that the scale of convenience would be turned by the extent of the participation of the bankrupt in the prior case, yet, upon general principles and as a matter of sound public policy, I do not think that the debtor's participation in the prior proceedings should be permitted to prevent an adjudication in the voluntary case, where, in spite of such participation, an adjudication in the voluntary case still appears to be for the clear and manifest interest of the estate and of its creditors.

2. Coming, then, to the application of these principles to the present case, the situation is this: The hardware company is admittedly insolvent. It has ceased to do business as a going concern, and its assets are now in the hands of a receiver appointed by the referee of this court.

The first involuntary petition in case No. 1,339 is being prosecuted by only three creditors, holding about 6 per cent. of the claims, while 22 creditors, holding about 16 per cent. of the claims, have entered their appearance in opposition to this petition, and are actively resisting an adjudication thereunder upon various grounds. Including the preferential payment sought to be set up by way of amendment, it charges only two preferences of comparatively slight amounts, only one of which, for $90.45, is alleged to have been made more than four months before the filing of the voluntary petition. And, owing to the patent defects in the original petition, it is far from ready for a hearing upon the question of an adjudication, since even if a hearing

should be had upon the various pending demurrers and motions, and the amendments which are sought to be made to the original petition should be allowed, it would still be open to the objecting creditors, if not to the hardware company, to deny the making of the preferences relied on as acts of bankruptcy; and it is clear that in the complicated state of the pleadings much time would inevitably be lost before the case would be ready for an adjudication, even if the petition should ultimately be sustained.

The second involuntary petition, No. 1,343, is likewise being prosecuted by only three creditors, holding a little more than 1 per cent. of the total claims. The hardware company has not in any manner participated in the proceedings in this case, and of the four small preferences which it seeks to set aside only one, amounting to $128.50, is alleged to have been made more than four months prior to the date on which the voluntary petition was filed. On the other hand, it appears that almost 200 creditors of the hardware company, holding approximately 78 per cent. of the claims against it, are not as yet directly represented in either of these proceedings. It is clear that it is for the best of the bankrupt's estate as a whole and of the great body of its creditors, who have no personal interest in the priority of either one or the other of the involuntary cases, that the adjudication should be made in that case in which it can be made at the earliest moment, and in which a trustee can first be appointed and the insolvent estate most speedily administered in the bankruptcy court. This can obviously be best accomplished in the voluntary case, which is ready for an immediate adjudication.

In this state of affairs, it seems to me to be both unnecessary and inexpedient to delay an adjudication under the voluntary petition in order that the complications in the pleadings in the first involuntary case, due to the inherent defect in the original petition, may be straightened out, with a possible ultimate failure of adjudication therein in the event of inability to prove the acts of bankruptcy alleged, or to delay such adjudication until the question may be determined whether or not the treasurer of the hardware company had authority to take the steps which he did in the name of the company in the first involuntary case. To whatever extent the hardware company might, so far as its own interests are concerned, have waived the right to proceed under an involuntary petition, for the reasons already stated, I do not think that this should be controlling upon the question of adjudication as against the manifest interest of the large body of creditors, but am of opinion that the adjudication should now be made in the voluntary case, in which an administration may be promptly had of the affairs of this insolvent estate, and that this adjudication should not be delayed for the prior determination of the many issues of law and fact raised in the first involuntary case, with the inevitable result that the assets of the estate will be largely diminished by the delay incident thereto, and the substance of the creditors largely consumed in the costs of unnecessary and profitless litigation. And as to the suggestion made in the brief filed in behalf of the petitioning creditors in the second involuntary cause that as the first involuntary petition did not

sufficiently allege an act of bankruptcy at the time their petition was filed, and as their petition alleged an earlier act of bankruptcy, a hearing as to an adjudication should be first had under their petition—although no motion to that effect appears to have been made—it is sufficient to say that general order in bankruptcy No. 7 (89 Fed. v, 32 C. C. A. xi), upon which they rely, at least by analogy, providing for the priority of the petition alleging the earliest act of bankruptcy, only applies by its terms where the debtor has appeared and shown cause against an adjudication on two or more involuntary petitions (In re Harris [D. C.] 155 Fed. 217) ; and, further, that, as the hardware company has not participated at all in the proceedings in cause No. 1,343, there will be no occasion for giving priority to that petition over the voluntary petition, even under the doctrine of waiver suggested in the Stegar Case.

I am clearly of opinion that the want of formal notice to the petitioning creditors of the application for an adjudication in the voluntary case, which it is stated in the Dwyer Case should, as a matter of proper practice, be given, is not now a valid objection to an adjudication in the voluntary proceedings, as it appears that the petitioning creditors in both the involuntary cases have, in fact, had actual notice of the application for an adjudication under the voluntary petition and have appeared in opposition thereto, so that the failure to give them formal notice is entirely immaterial. Neither should adjudication be delayed under the voluntary petition, even if it be a fact, as alleged, that the motive of the hardware company in seeking a speedy adjudication in the voluntary case is that it may be enabled to effect a composition with its creditors, although it is difficult to see how this can in fact be the motive of the hardware company as the amendment made by section 5 of the act of June 25, 1910, to section 12a of the bankruptcy act, specifically authorizes a bankrupt to offer composition to creditors either before or after adjudication. But, however that may be, as the bankruptcy act makes specific provisions for compositions, and they are in all respects proper and often very advantageous to creditors, and can only be confirmed after the court is satisfied that they are for the best interests of the creditors (section 12d [1] of the bankruptcy act), it does not appear that the desire of the hardware company to take advantage of this provision of the bankruptcy act, if it has such intention, is a valid ground of objection to an adjudication under its petition. Neither is there any difficulty in making an adjudication under a voluntary petition by reason of the impairment of any rights that may have accrued to the petitioning creditors in either of the involuntary cases by reason of liability for costs and attorney's fees, since such rights, if any, can be fully protected by proper order of the court as was done in the Stegar Case.

[2] Nor does it appear that the fact that an adjudication is made in the voluntary case will necessarily render void the receivership proceedings in the involuntary case No. 1,339; but, on the contrary, all rights under such receivership proceedings, including liability for fees and expenses of the receiver, may likewise be fully protected by order of the court.

Upon the whole and after a careful consideration, I conclude that adjudication should now be made in the voluntary case, and that an order should be entered protecting the rights of the petitioning creditors in the involuntary cases in general conformity with that which was directed to be entered in the Stegar Case, and with proper provisions in reference to the receivership in case No. 1,339, nothing now appearing in the record, which, in my opinion, at this time, shortly before the election of a trustee, require the discharge of the receivership, or change therein, or the entailing of any additional expense on the estate in consequence thereof.

A decree will accordingly be entered overruling the motion to stay adjudication in the voluntary case, and ordering and adjudging (1) that the referee proceed to adjudicate the hardware company a bankrupt on its own petition in cause No. 1,354, and to administer the estate thereunder as required by law; (2) that until the further order of the court all proceedings be stayed under the involuntary petitions filed by the First National Bank and others in cause No. 1,339 and by A. C. Bickhaus and others in cause No. 1,343, except that the receiver appointed in cause No. 1,339 will continue in custody of the assets of the hardware company as receiver in said cause No. 1,339, and under his appointment therein until such time as a trustee shall be appointed in cause No. 1,354, when he will turn over the assets to such trustee, but this continuance of the receivership is without prejudice to the right of any creditors to bring forward, pending the appointment of a trustee, their objections to the receivership made in cause No. 1,339; (3) that the adjudication in bankruptcy against the hardware company in cause No. 1,354 shall not prejudice any right obtained by any of the petitioning creditors by the filing of their prior petitions in causes No. 1,339 and 1,343, and they may apply at any time after adjudication in cause No. 1,354 to bring forward either or both of their involuntary petitions, if found necessary to protect the rights of creditors which cannot be saved under the adjudication on the voluntary petition; (4) that the proving of claims or acceptance of dividends under the adjudication upon the voluntary petition shall not be deemed a bar or waiver of the rights of creditors to prove their claims under an adjudication on either or both of the involuntary petitions, if such should hereafter be made; (5) that the petitioning creditors in either or both of the involuntary causes may prove against and be allowed out of the assets of the bankrupt in case No. 1,354 their reasonable costs and fees in such involuntary causes and to which they may be entitled, including the reasonable costs and fees incident to the receivership in cause No. 1,339; and, to the end of preserving all the rights reserved under this order, the voluntary petition and either one or both of the two involuntary petitions may be hereafter consolidated and treated as one proceeding if it becomes necessary in the future progress of this matter. (See, as to such consolidation, In re Stegar, supra, at page 981 of 113 Fed.; In re Knight (D. C.) 125 Fed. 35, 37.)