**Angus G. WYNNE, Jr., Bankrupt, Appellant,**

v.

**William J. ROCHELLE, Jr., Trustee in Bankruptcy, et al., Appellees.**

No. 23491.

United States Court of Appeals
Fifth Circuit.

July 31, 1967.

Rehearing En Banc Denied Dec. 13, 1967.

Byron L. Williams, Dallas, Tex., Sydney Krause, New York City, for appellant.

Lawrence L. Beason, Ernest E. Figari, Jr., Dallas, Tex., for intervenors.

William Madden Hill, Arthur S. Goldberg, Dallas, Tex., for appellees.

Before GEWIN and COLEMAN, Circuit Judges, and INGRAHAM, District Judge.

GEWIN, Circuit Judge:

This bankruptcy case involves a novel question as to the power of a district court sitting in bankruptcy to enter a nunc pro tunc order which retroactively adjudicated the appellant a bankrupt. The appellant, Angus G. Wynne, Jr., was adjudged a bankrupt in the United States District Court for the Northern District of Texas on November 24, 1964, pursuant to the second involuntary petition in bankruptcy filed by three of the appellant's creditors. The first petition filed by the same creditors on September 3, 1964, was dismissed on November 19, 1964.[1] Subsequently, a motion was filed by the trustee in bankruptcy and three other creditors seeking to have the order dismissing the first petition vacated and set aside. They also sought to have the two proceedings consolidated and the appellant adjudged a bankrupt as of September 3, 1964, the date of the filing of the first petition. After a hearing before the referee, and on his recommendation, the district court granted the motion. The bankrupt appeals from that order asserting that the district court lacked the power to set aside the dismissal, and that

if it had the power, the retroactive adjudication denied his right to a trial by jury. We affirm that portion of the order setting aside the dismissal, but reverse that portion of it adjudicating the appellant a bankrupt, without the benefit of a jury trial, and remand the case for trial by a jury.

The first involuntary petition in bankruptcy was filed on September 3, 1964, by Watermann-Lider Corp., Sidney Wand d/b/a Modern Frosted Foods Co., and Edward Boker, Inc., three creditors of the appellant, alleging that the appellant was insolvent and that certain transfers made within four months prior to the date the petition was filed constituted an act of bankruptcy. After securing an extension of time in which to plead,[2] the appellant answered denying that the petitioners were his creditors, that he was insolvent, or that he made the alleged transfers. A demand for a jury trial was also timely made.

The transfers which the creditors alleged constituted an act of bankruptcy were made by Wynne-Compass Fair, Inc., a joint venture in which Wynne was a member, in June and July of 1964 to Embassy Grocery Corp. Wynne-Compass Fair, Inc. was organized by the appellant Wynne and Compass Fair, Inc., a New York corporation, to operate the Texas

---

1. In view of the fact that the proceedings extended over a substantial period of time, the following chronology may be helpful:

| | |
|---|---|
| Sept. 3, 1964 | First petition in bankruptcy filed. Case No. Bk-3-281. |
| Nov. 19, 1964 | First petition in bankruptcy filed. Case No. BK-3-281. |
| Nov. 20, 1964 | Second petition in bankruptcy filed (same creditors). Case No. BK-3-328. Wynne admitted insolvency. |
| Nov. 24, 1964 | Wynne adjudicated a bankrupt in case No. BK-3-328. Consented to the adjudication. |
| Feb. 4, 1965 | Motion filed by trustee and three other creditors to: 1) vacate order dismissing petition in BK-3-281. 2) consolidate cases Nos. BK-3-281 and BK-3-328, and 3) adjudicate Wynne a bankrupt as of September 3, 1964. |
| Aug. 5, 1965 | Motion of February 4 granted. |
| Aug. 10, 1965 | Motion for new trial filed by Wynne. |
| Dec. 13, 1965 | Motion for new trial denied, effective as of December 2, 1965. |

---

2. The referee in bankruptcy found on the hearing held in conjunction with the motion to set aside the dismissal that the appellant's motion for an extension of time was made for purposes of delay, and concluded that had he known of the subsequent developments, he would not have granted the extension.

pavilion and musical show at the New York World's Fair. The venture was unsuccessful from the outset, and when an arrangement with creditors under Chapter XI of the Bankruptcy Act proved impossible, it was adjudicated a bankrupt in August of 1964 by the United States District Court for the Southern District of New York.

After the September 3 petition was filed, the creditors sought to take the deposition of the appellant. They tried unsuccessfully to obtain the appellant's consent to take the deposition and subsequently notice was given pursuant to the F.R.Civ.P. to take the appellant's deposition on October 23. This attempt to compel discovery irked the appellant's attorneys and for some reason no deposition was taken.[3] Finally, a meeting was held on November 19, 1964 between the attorneys for the creditors and the bankrupt. At that time the attorneys for the bankrupt pointed out that the transfers which the creditors alleged constituted an act of bankruptcy were actually made by Wynne-Compass Fair, Inc. and not by the appellant. They further informed the creditors that if the petition was dismissed, they did not care about a second petition and would even give the creditors an act of bankruptcy. Presented with the choice between going to trial with the possibility that they could not sustain the petition, and permitting the original petition to be dismissed with an assurance that they would be given an act of bankruptcy, the creditors chose the latter alternative and did not oppose the motion to dismiss.

On that same day, November 19, 1964, a motion to dismiss, carefully couched in terms of a dismissal on the merits, was submitted to the district court. After a short conference with the attorneys, during which counsel for the creditors advised the court that they would pursue the bankruptcy matter further, the court granted the motion. The following day, November 20, 1964, a second involuntary petition in bankruptcy was filed by the

same creditors. The bankrupt admitted his inability to pay his debts, and he was adjudged a bankrupt on November 24, 1964.

The motion which gave rise to the controversy before us was filed on February 4, 1965 by the trustee in bankruptcy and three other creditors, Flagstaff Foods Corp., L & M Fashions, Inc., and Factory Sales Corp. The motion prayed to have the order dismissing the original petition set aside as improvidently granted, the two proceedings consolidated, and the appellant adjudged a bankrupt as of the date the original petition in bankruptcy was filed, September 3, 1964. The district court referred the case to the referee in bankruptcy as a Special Master to hold hearings and make a recommendation to the court. The referee concluded, after a full hearing at which evidence was presented by both parties, that the order dismissing the September 3 petition should be deemed to have been secured by consent. Since no notice was given to creditors as required by § 59(g) of the Bankruptcy Act, 11 U.S.C. § 95(g) (1964), he further recommended that the order be set aside as improvidently granted. He also found that the dismissal was the result of a hard fought legal battle and was not the product of collusion. In addition, he recommended that the proceedings be consolidated, and that the appellant be adjudged a bankrupt as of September 3, 1964. The district court adopted the referee's report and entered a judgment in accordance therewith. The appellant's motion for a new trial and/or rehearing was denied, and this appeal was taken.

The appellant argues that the district court lacked the power to set aside the order dismissing the September 3 petition because the dismissal was on the merits. As such it was a final judgment which could not be attacked by third parties. In essence, he asserts that the dismissal was entered pursuant to § 18(d) of the Bankruptcy Act, 11 U.S.C. § 41(d) (1964), and not pursuant to § 59(g), 11

---

3. In his report the Referee noted that the attorney who filed the first petition testified that he "did not push hard enough."

U.S.C. § 95(g) (1964) as the appellees contend. Thus, the dismissal was not subject to being set aside as improvidently granted for lack of notice to creditors since a § 18(d) dismissal does not require such notice.

Section 59(g) provides that a petition in bankruptcy shall not be dismissed by consent or for want of prosecution until after notice has been given to other creditors.[4] Since the notice provisions of the section were designed to prevent the bankrupt and the petitioning creditors from entering into a settlement which might operate to the detriment of the other creditors, the appellant contends that collusion among the parties is necessary for a dismissal to fall within the ambit of the section. The referee found after a full hearing that no collusion existed, but that the dismissal was the result of a hard fought legal battle.[5] The appellant contends that the petitioning creditors acceded to the dismissal because they realized that they could not prove that the appellant committed the acts of bankruptcy alleged in the petition since the transfers were made by Wynne-Compass Fair, Inc., and not the appellant. Therefore, he concludes, the dismissal was not under § 59(g) but one under § 18(d). Since it is well established that notice is not required for a § 18(d) dismissal, the order is final and may not be set aside.

■ As the appellant correctly observes, the notice provisions of § 59(g) of the Bankruptcy Act were designed to prevent injurious settlements and to pro-

tect the estate for creditors other than those who brought the petition. If such other creditors desired the bankruptcy proceedings continued, they could intervene upon notice of the pending dismissal under § 59(f), 11 U.S.C. § 95(f), and prosecute the matter further. By intervening they would preserve the date of bankruptcy established by the original petition. While a collusive settlement between the parties is clearly one of the evils sought to be prevented by the notice requirement, it is not the only harm with which the section is concerned. The statute requires notice before a petition may be dismissed by consent, for want of prosecution, or upon application of the petitioner or petitioners. It applies where both voluntary and involuntary petitions in bankruptcy are involved. If the only evil threatened was that of a dismissal obtained through collusion, the statute would have been much simpler and surely would not apply where a voluntary petition was involved. By employing the multifarious approach used, it is clear that the statute is concerned with evils other than collusive settlements and that notice is required in situations other than where collusion was established or alleged. Thus, to effectuate the purpose of the notice provisions and protect the rights of creditors who have relied upon the pending petition, be it voluntary or involuntary, the section is to be given a liberal construction.

■ That is not to say that all dismissals require notice. It is well established that notice is not required where the matter has been submitted to the

---

4. In pertinent part the section provides: "A voluntary or involuntary petition shall not be dismissed upon application of the petitioner or petitioners, or for want of prosecution, or by consent of parties, until after notice to the creditors as provided in section 94 of this title * * *." 52 Stat. 868 (1938), 11 U.S.C. § 95(g) (1964).

5. In his report to the district court the referee commented as follows: "As I see it the presentation to you of the order of dismissal represented no collusion but was the outcome of a

hard fought, skillfully waged battle between two sets of attorneys. The attorneys for Wynne were seeking to insulate from attack as voidable preferences or fraudulent transfers certain transfers amounting perhaps to more than a million dollars which had been made by Wynne within four months of the date of filing the first involuntary petition. The purpose of the attorneys for the petitioning creditors was to have Wynne adjudicated in the Dallas court with the hope and desire that they would participate in the proceedings as attorneys."

court for consideration and is dismissed on the merits either after hearing, Lackawanna Leather Co. v. La Porte Carriage Co., 211 F. 318, 319 (7 Cir. 1914); Neustadter v. Chicago Dry Goods Co., 96 F. 830 (E.D.Wash.1899); see 3 Collier, Bankruptcy ¶ 69.34, p. 658–60 (1966), or because the petition is fatally defective on its face. Zlot v. San Jose Fashions, Inc., 284 F.2d 469 (9 Cir. 1960); In re Lande, 20 F.Supp. 26 (S.D.N.Y.1937); In re Smith, 14 F.2d 464 (E.D.Ill.1926). Similarly, intervention which could have saved a petition that was dismissed after hearing for lack of the statutory number of creditors comes too late, and the dismissal may not be set aside for want of notice. Mutual Bldg. & Loan Ass'n. v. King, 83 F.2d 798 (9 Cir. 1936). Thus, notice is not required for a petition to be dismissed where the petitioning creditors fail to prove their case after a hearing. In re Chalfen, 223 F. 379 (D.Mass. 1915). But unless the matter has been submitted to the court and it has determined that the petitioners can not sustain their petition, notice is required. See Neustadter v. Chicago Dry Goods Co., supra.

 In the *Chalfen* case, supra, the court was presented with a unique situation not unlike the one before us. The parties went to trial, but at trial the petitioning creditors failed to produce any evidence in support of their petition. The alleged bankrupt moved to have the petition dismissed without notice to creditors. The court held that if the petitioner's failure to adduce any evidence resulted from its inability to do so and not from an agreement or collusion between the parties, the movant was entitled to have the petition dismissed without notice to creditors. It therefore remanded the case to the referee to hold hearings and determine whether the failure to adduce

evidence resulted from an agreement or collusion. The appellant asserts that *Chalfen* stands for the proposition that collusion is required before the notice provisions of § 59(g) are applicable. We do not agree. The court in *Chalfen* observed that "If upon a mere failure of the petitioners to produce evidence at a hearing, an order of dismissal may be entered up without notice to other creditors, an easy way will be open to evade the wholesome provisions of section 59 (g) and to trade upon petitions in bankruptcy." 223 F. at 381. This concern for the preservation of the estate in the interest of creditors not a party to the petition comports with the purpose of the notice provisions. It would therefore be inconsistent and unduly restrictive to read the opinion so as to require collusion in order for notice to issue. The necessity of permitting creditors who have relied on the pending suit to intervene exists whether the dismissal is procured through collusion or by agreement, and those interests are better served by requiring notice whether the dismissal is obtained through an agreement or collusion among the parties.[6] In both situations the evil is the same.

The appellant argues that this construction produces the illogical result of requiring a full formal hearing, complete with witnesses and documentary proof, when it is clear that the allegations of the petition can not be proved. There may be some merit to this argument, but contrary to the appellant's contention we are not presented with a case which raises that issue. The appellant asserts that the creditors' decision not to oppose the motion to dismiss was based on their realization that they could not prove that the transfers alleged in the petition as acts of bankruptcy were made by the appellant or were chargeable to him as an

---

6. Were the petitioning creditors the only persons affected by the dismissal, we would not be so concerned to protect them from their own errors of judgment. However, a bankruptcy proceeding involves more than the interests of the immediate creditors who commenced the proceeding, and it is the rights of those creditors not a party to the original proceeding that the section was intended to protect, and in whose interest it should be construed. Cf. In re New Chattanooga Hardware Co., 190 F. 241 (E.D. Tenn.1911); In re Fuller, 9 F.2d 553 (2 Cir. 1925).

act of bankruptcy. However, on the basis of the record before us, we can not agree that the dismissal was presented to the district court or granted on that basis. In his report to the district court, the referee stated that since the motion to dismiss was presented to the district court, it would know better whether the motion was presented as a consent judgment and whether it was under the impression that it was granting a dismissal by consent or on the merits. In setting aside the dismissal, the district court impliedly held that the dismissal was represented to be and was by consent. Thus, as the case comes to us, we have, in effect, a holding that the dismissal was obtained by consent of the parties and not secured on a representation by the petitioning creditors that they could not prove the allegation of their petition. Further, the referee found on the hearing on the motion to set aside the dismissal that the creditors agreed not to oppose the motion to dismiss in exchange for a bargained for promise not to oppose the subsequent petition. Thus, we are not faced with and do not pass on the problem presented where the creditors acknowledge that they can not prove the allegations of their petition.

 By postponing the date of adjudication until November 20, the appellant had insulated several substantial transfers which otherwise could have been attacked by the trustee as voidable preferences. The appellant's delay in submitting to the taking of his deposition [7] gave him an opportunity to hide from the petitioning creditors these possible preferential transfers which would have substantially increased the size of his estate. Further, by keeping the creditors ignorant of such transfers, he enhanced the chances that they would not oppose his motion to dismiss. While such procedure might not have been successful were it not for the creditors' lack of diligence, the legal maneuvers did succeed in the possible insulation of approximately one million dollars worth of assets. Immunization and resulting depletion of the estate are exactly the evils which the notice provisions of § 59(g) were designed to prevent. It would fly in the face of clearly established policy and explicit statutory language to hold that the nominal acquiescence of the petitioning creditors in the dismissal amounted to an admission that they could not establish the allegations of their petition which would result in precluding the setting aside of that order. We therefore conclude that the November 19 order dismissing the September 3 petition falls within the ambit of § 59(g) and was properly set aside as improvidently granted for lack of notice to creditors.

 However, merely because the order was subject to being set aside does not mean that the court could relate the November 24 adjudication back to September 3, or that it could, on the basis of the record before it, adjudge the appellant a bankrupt as of September 3. When an order is set aside as improvidently granted, the prior status of the case is restored and the situation is the same as though the order or judgment had never been entered. In re Rochester Sanitarium & Baths Co., 222 F. 22 (2 Cir. 1915); Aetna Life Ins. Co. v. Board of County Com'rs of Hamilton County, 79 F. 575 (8 Cir. 1897). Thus, when the court set aside the order dismissing the September 3 petition, the proceedings had progressed to the stage where there was a controverted involuntary petition in bankruptcy and a demand for a jury trial. Normally, at that point a case is ready for trial, and the appellant argues that the court should have so proceeded and should not have adjudged him a bankrupt as of September 3.

The appellees seek to justify the retroactive adjudication on the broad equity powers of a bankruptcy court and the need, in the instant case, to protect the bankrupt's estate for the benefit of the creditors from the alleged depletive conduct of the appellant. The referee con-

---

7. As noted earlier no deposition was ever taken, perhaps because counsel for the petitioning creditors in the September 3 petition did not "push hard enough."

cluded in his report to the district court that in light of the means by which the appellant secured the postponement of the date of adjudication and because of his subsequent consent to an adjudication, he should not be permitted to back up and start over. Therefore, he recommended that the appellant be adjudicated a bankrupt as of September 3. The appellees assert that the application of the doctrine of relation back is a well recognized one in bankruptcy and that its use here was proper and within the power of the bankruptcy court. They contend that the two petitions in bankruptcy are part of the same continuing process. As such, the court could modify any order so long as no intervening rights were jeopardized. Since the appellant consented to the adjudication on November 24, the appellees argue, he waived his right to a jury trial and the court, acting in the interest of the creditors, was within its power as a court of equity when it adjudged the appellant to be a bankrupt as of September 3.

■■■ We fail to see how reliance on the acknowledged equity powers [8] of the bankruptcy court supports the action below. Assuming that these two petitions constitute part of one continuing process, it does not follow that the equity powers of the bankruptcy court authorize the retroactive adjudication in total disregard of the demand for a jury trial, merely because the appellant consented to the November 24 adjudication, even considering the dilatory tactics used in postponing the date of adjudication. It is well settled that where an amendment to a petition alleges a new act of bankruptcy, the adjudication dates from the filing of the amendment and not from the filing of the original petition. In re Ideal Mercantile Corp., 244 F.2d 828 (2 Cir. 1957); Whalen v. Gordon, 95 F. 305 (8 Cir. 1899); 2 Collier, Bankruptcy ¶ 18.26, p. 70 (1966). The same rule obtains where the petition is insufficient to notify the bankrupt of the act relied on as an act of bankruptcy. Dworsky v. Alanjay Bias

Binding Co., 182 F.2d 803 (2 Cir. 1950); In re Louisell Lumber Co., 209 F. 784, 785 (5 Cir. 1913). The September 3 petition alleged that certain transfers made to Embassy Grocery Corp. constituted an act of bankruptcy, while the November 20 petition alleged that the act of bankruptcy was the appellant's admission of his inability to pay his debts. Since it is clear that these are two separate and distinct acts of bankruptcy, the adjudication on the November 20 petition would not relate back to September 3 if it was an amendment to that petition and not another petition. We do not think a different disposition should result because it is a second petition in a continuing proceeding.

■■■ But more importantly, the district court denied the appellant his right to a jury trial by adjudging him a bankrupt as of September 3. The right to a jury trial on the issues of insolvency and the commission of an act of bankruptcy are specifically conferred in proceedings commenced by an involuntary petition in bankruptcy by § 19(a) of the Bankruptcy Act, 11 U.S.C. § 42(a) (1964). If a demand for a jury is timely made, that right is absolute. Elliott v. Toeppner, 187 U.S. 324, 23 S.Ct. 133, 47 L.Ed. 200 (1902); Newton v. Glenn, 149 F.2d 879 (5 Cir. 1945). The appellant requested a jury trial in his answer and, in addition, filed a separate demand for a jury trial at the same time. Such demands were timely made under section 19 and rendered his right to a jury determination of the two controverted issues inviolate. Recognizing the demand of the appellant for a jury trial, the Referee returned the proceedings to the district court on October 12, 1964. The appellants' appearance at the hearing on the motion to dismiss did not constitute a waiver of that right, cf. William Edwards Co. v. La Dow, 230 F. 378 (6 Cir. 1916), nor did his subsequent consent to the November 24 adjudication waive that right with respect to the issues raised by the September 3 petition. In re Louisell

---

8. With respect to the equity powers of a bankruptcy court, see Wayne United Gas

Co. v. Owens Illinois Co., 300 U.S. 131, 57 S.Ct. 382, 81 L.Ed. 557 (1937).

Lumber Co., 209 F. 785, 787 (5 Cir. 1913). As such, we are forced to conclude that the district court erred in adjudging the appellant a bankrupt as of September 3.

■ The appellees contend that even if the right to a jury trial was not waived by the appellant, the error was harmless as the only issues submissible to a jury are resolvable against the appellant as a matter of law on the record before us. As indicated earlier, a jury trial in bankruptcy is limited to the insolvency of the debtor and to the commission of an act of bankruptcy. The appellees assert that the appellant's acknowledgment that he was unable to pay his debts on November 20 and testimony during the hearing on the motion to set aside the dismissal that he was insolvent before September 3 are sufficient to support a finding of insolvency as of September 3. Further, they contend that since it is admitted that Wynne-Compass Fair, Inc. made the payments alleged in the September 3 petition to be the act of bankruptcy, the sole remaining issue is whether they are chargeable to the appellant, a question of law.

■ Although there may be some evidence in the record that the appellant was insolvent as of September 3, we do not think that it is sufficient for the issue to be resolved on the basis of the record before us, and without submitting the matter to a jury. The appellant's admission of his inability to pay his debts as of November 20 does not amount to an admission of insolvency as of September 3.[9] Cf. In re Rodgers-Meyers Furniture Co., 46 F.2d 121, 122 (N.D.Texas 1931). Rather it is at best some evidence of insolvency at the earlier date. Nor do we believe the testimony at the hearing that he was insolvent prior to September 3 precludes the submission of the issue to a jury. While the right to a jury trial in a bankruptcy case is subject to the common law rules regulating the conduct of jury trials, Walker Grain Co. v. Gregg Grain Co., 268 F. 510 (5 Cir. 1920), the record before us does not demonstrate that the petitioning creditors are entitled to a verdict as a matter of law.[10] Thus, a jury trial is required as to the issue of insolvency at least. In view of the necessity of a jury determination of the appellant's insolvency, and because of the lack of sufficient factual data relating to Wynne-Compass Fair, Inc., we do not pass on the question whether the transfers made by that joint venture when insolvent may constitute acts of bankruptcy on the part of the appellant, a member of the venture.[11] Rather we remand this

9. The appellees also argue that since the appellant admitted he was insolvent and permitted himself to be adjudicated, he has no standing to prosecute this appeal. We believe this argument is without merit. As long as the bankrupt was solvent he had a right to prefer those creditors he chose. Dworsky v. Alanjay Bias Binding Co., 182 F.2d 803, 805 (2 Cir. 1950). As such, he has a vital interest in the date of his adjudication, and therefore has standing to appeal. Further, since creditors may no longer contest an adjudication, Citizens Nat. Bank v. Speer, 202 F.2d 491 (5 Cir. 1953), the bankrupt is of necessity the only person who can obtain review of proceedings which result in his adjudication.

10. The Referee in his report as Special Master recognized the value of a jury trial to the appellant. We quote from that report:

"At the meeting on November 19 the attorneys for the petitioning creditors faced a dilemma. They could assent to the dismissal of the first petition and secure an immediate, uncontested adjudication upon the filing of a second involuntary petition. On the other hand they could face not only the delay incident to a jury trial *but there was a strong possibility that they might not be able to sustain their petition in a contested trial.* They suspected that transfers had been made which would be insulated from attack in bankruptcy proceedings under a new petition but they did not have information on this subject and could not get it. They decided on the first alternative." (Emphasis added)

11. The appellees refer us to Francis v. McNeal, 228 U.S. 695, 33 S.Ct. 701, 57 L.Ed. 1029 (1913) in support of their contention that the debts of a joint venture are the debts of its members. But see Liberty Nat'l Bank v. Bear, 276 U.S. 215, 224-225, 48 S.Ct. 252, 72 L.Ed. 536, 540 (1928).

issue, along with the question of insolvency, to the district court for further proceedings.

█ Finally, the appellees' motion to strike the intervention of the First National Bank in Dallas is granted. The Bank sought to intervene while this case was pending on appeal, and was granted that right subject to further orders of the Court. It seems clear that under the statute a creditor has no interest in the date of adjudication and may not attack an adjudication. Commercial Credit Corp. v. Skutt, 341 F.2d 177 (8 Cir. 1965); Citizens Nat'l Bank v. Speer, 202 F.2d 491 (5 Cir. 1953). The Bank's brief is accepted and was considered as an amicus curiae brief.

Affirmed in part; reversed and remanded in part.

## ON PETITION FOR REHEARING

### PER CURIAM:

The appellees have filed a petition for rehearing and a petition for rehearing before the Court en banc urgently insisting that there is a conflict between our decision in this case and the decision of another panel of this court in the case of Harold C. Abramson v. Boedeker, 379 F.2d 741 (5 Cir. 1967). We have given careful consideration to such contentions but are unable to agree with them. There are a number of factual distinctions involved and the controlling legal principles are essentially different.

█ In our decision in *Wynne* we were dealing primarily with the fundamental right of every alleged bankrupt in cases where an involuntary petition has been filed to demand and receive a trial by jury. In *Abramson*, a *creditor* of the bankrupt attacked the date of adjudication in a collateral proceeding brought by the Trustee to set aside as voidable preferences certain transfers made within four months of the date of adjudication. As clearly stated in *Abramson* (and as is evident from the opinion in *Wynne*), "The key is the defensive position taken by the debtor-alleged-bankrupt." As pointed out in *Abramson* this fact is true, "Since the creditor cannot oppose the petition directly, he ought not to have the right to gain the same benefit through a collateral attack."

The *Abramson* decision reserved judgment on a vital question which the court was required to decide in *Wynne* and in doing so used the following language:

"Whatever might have been the case had the debtor persisted in denial of bankruptcy, when the debtor here withdrew his answer and acquiesced in adjudication by default, the date of bankruptcy was fixed as of the date of the original petition. The District Court was in error in finding to the contrary."

This reservation of judgment was no doubt based upon the fact that the bankrupt formally withdrew its defense and an adjudication by agreement and default was entered. In *Wynne* the bankrupt contested the petition from the beginning and continued to contest throughout the proceedings.

As to the doctrine of relation-back the *Abramson* opinion takes note of the fact that although the parties and the court persisted in discussing the problems in terms of such doctrine, "the answer cannot be found there." In addition, *Abramson* holds that the original allegations of the petition, couched in general terms, may be clarified by an amendment specifying the acts of bankruptcy in detail. In *Wynne* we were dealing with entirely new and different alleged acts of bankruptcy.

We have considered all of the contentions of the appellees and find them without merit. Moreover, we consider it unnecessary to point out other factual and legal distinctions apparent from a careful analysis of the two cases.

The Petition for Rehearing is denied and no member of this panel or Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, Rule 25(a), subpar. (b), the Petition for Rehearing En Banc is denied.