**DWORSKY et al. v. ALANJAY BIAS BINDING CORPORATION.**

No. 217, Docket 21652.

United States Court of Appeals Second Circuit.

Argued May 2, 1950.

Decided June 7, 1950.

Krause, Hirsch, Levin & Heilpern, New York City (Elliott L. Krause, New York City, of counsel), for appellants.

I. Louis Kottler, Brooklyn (Samuel F. Berkon, New York City, of counsel), for appellee.

Before L. HAND, Chief Judge, and CHASE and CLARK, Circuit Judges.

CHASE, Circuit Judge.

On May 10, 1949, appellants filed an involuntary petition in bankruptcy against Alanjay Bias Binding Corporation, the appellee. The act of bankruptcy alleged was that, within the four months next preceding the date of the petition, appellee did "on dates unknown to your petitioner while insolvent transfer property and various moneys amounting in the aggregate to the value or sum of $1,000, to various creditors with intent thereby to prefer such creditors over other creditors of the same class, the names of the creditors receiving such preference being unknown to your petitioner." On June 17, 1949, appellee moved to dismiss the petition on the ground that it failed to allege an act of bankruptcy. On June 22, 1949, this motion was denied, appellants were given until June 29 to file an amended petition, and appellee was directed to furnish them with certain information respecting the disbursement of some $4500 received by appellee from the sale

on February 15, 1949 of its fixtures, machinery, merchandise and lease. On June 23, 1949, appellee informed appellants that $634.88 was paid to certain named employees; that $341.34 was paid to the landlord of appellee's business premises; that the Collector of Internal Revenue and the New York State Unemployment Insurance Fund received eight checks, totaling $1389.-59; that $550 was paid to one, Fay Bloom, in settlement of a $700 debt secured by a chattel mortgage; that photostatic copies of certain of appellee's checks that were allegedly forged were procured for $25.03; that $250 was paid "the accountant" to determine taxes owing to the federal and state governments; that a fee of $500 was paid to appellee's attorney; that $89 was spent for an investigation of the payees of the allegedly forged checks; and that all of these sums were paid out of the $4,500 within a few days after the sale of the assets on February 15, 1949. Appellants' attorney thought this an insufficient compliance with the court's order and on June 24, 1949 requested the appellee to be more explicit as to certain details and, not being satisfied with additional information so obtained, sought a further order for the desired information. It was furnished, however, on July 18, before the second order became effective, and on August 18, 1949 an amended involuntary petition was filed.

The act of bankruptcy alleged in this amended petition was the transfer, while insolvent of $250 to one, Halpern (the accountant) on or about February 18, 1949; of $550 to Berkon (the lawyer) on February 18 and February 24, 1949; of $89 to one, Millman (another lawyer, who conducted the investigation) between February 15 and 18, 1949; and of $337.34 to Walton Holdings, Inc. (the landlord) on or about January 24, 1949—each transfer allegedly with intent to prefer the mentioned creditors over other creditors of the same class. Meanwhile, the time to file the amended petition had been extended by stipulation but more than four months had elapsed between the last alleged preferential payment and the filing of the amended petition. The amended petition was dismissed because no preference within four

months of its date was alleged and because the original petition was so lacking in substance that the amendments could not relate back to its date. In an opinion filed when the petition was dismissed the judge said that he was "unable to find anything in the record of the case indicating that the petitioning creditors when they filed the original petition had in mind or intended to plead any of the acts ultimately stated as preferences in the amended petition."

Section 3, sub. a(2) of the Bankruptcy Act, 11 U.S.C.A. § 21, sub. a(2) makes it an act of bankruptcy for a person to have "transferred, while insolvent, any portion of his property to one or more of his creditors with intent to prefer such creditors over his other creditors * * *." Section 3, sub. b, 11 U.S.C.A. § 21, sub. b provides that "A petition may be filed against a person within four months after the commission of an act of bankruptcy. * * *" In Re Fuller, 2 Cir., 15 F.2d 294, following previous decisions to like effect, we held that a petition simply alleging a preferential transfer, while insolvent, to "various creditors"—that is, a petition merely in the terms of the statute —was so general that no preference could be identified as having been alleged even imperfectly within the time limited and consequently specific allegations of preferential payments not made within four months preceding the proposed amendment could not be thus added. In Re Gaynor Homes, Inc., 2 Cir., 65 F.2d 378, 379, we followed In re Fuller, supra, although the original petition added to allegations in the terms of the statute the allegation that "various moneys amounting in the aggregate to the sum of $6500" were transferred to the "various creditors." The basis of these decisions is that from such pleadings the alleged bankrupt cannot identify the alleged preferential payments and thus cannot assert his right under the statute to have preferences disregarded if they are not alleged as acts of bankruptcy within four months of their occurrence. E. g., Hovland v. Farmer's State Bank, 8 Cir., 10 F.2d 478. These cases were, however, decided when General Order 37 made the Equity Rules control as to procedural mat-

ters and when neither the Equity Rules nor the General Order referred to the relation back of amendments.

When the Rules of Civil Procedure, 28 U.S.C.A., become effective, however, General Order 37 was changed to make them applicable except where inconsistent with the Act or the Orders. 11 U.S.C.A. following section 53. Under Rule 15(c), an amendment relates back whenever the claim asserted in it "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." In Glint Factors, Inc. v. Schnapp, 2 Cir., 126 F.2d 207, 208, we were faced with the effect of this change in the governing procedural rules. We held that relation back would be permitted where the original petition, in addition to allegations in the statutory terms, alleged that the transfers were made to "divers persons, firm (sic) and relatives" and that the transfers were "of money in a sum exceeding $2300." In so holding, however, we pointed out that there must be enough to show that "the pleader did know, and attempted to state, some definite conduct, transaction or occurrence." In Re J. P. Linahan, Inc., 2 Cir., 133 F.2d 688, we allowed an amendment to relate back where no more specific fact was originally alleged than that the amount of money transferred was approximately $40,000. Compare In re Stroh, M. D. Pa., 52 F. Supp. 958. Although we may have heretofore allowed amendment more freely than we do in this instance, we believe it necessary to hold that relation back is not permissible under circumstances like those here shown.

We do so because we think—although the Rules of Civil Procedure should be liberally construed—that to hold otherwise would amount to amending Section 3, sub. b of the Bankruptcy Act. The statute which makes all preferences innocuous as acts of bankruptcy after four months thus recognizes the interest of the debtor in not being adjudged a bankrupt because of old transfers to creditors and that of the creditor-transferees in not having old transfers to them upset. Unless, therefore, some preference is timely alleged as an act of bankruptcy with sufficient descriptive detail to show that a particular transfer is charged, the allegation is so colorless that amendment becomes not an amplification but a replacement.

It is true that to require even this much certainty in pleading sometimes may aid concealment. But that is a circumstance inherent in the Act, which allows preferential transfers to become non-voidable by lapse of time. Moreover, the Act itself does deal with that phase of the matter by making concealment or removal of property with intent to hinder, delay or defraud a creditor a separate act of bankruptcy, Sec. 3, sub. a (1), and one as to which the four month period does not begin to run until discovery of the concealed or removed assets. In re Verona Const. Co., 3 Cir., 126 F.2d 976.

In determining whether an original allegation can be identified with a proposed amendment to make the latter relate back to the date of the original, we pay no attention to what the petitioning creditor may have had in mind at the time of filing the original petition except in so far as the language used therein indicates it. Instead, we look only to the petition and proposed amendment to determine whether, when considered together, they disclose on their face that in the original petition the creditor set forth, or attempted to set forth, the same preferential transfer or transfers ultimately relied upon. This appellant initially alleged preferential transfers in the round sum of $1,000. The four transfers alleged in the proposed amendment neither in part nor in total even approximate this figure. In saying this, however, we do not mean to suggest that fairly close correspondence of the amount ultimately, to that initially, alleged would alone be an adequate test of amendability. To do so would put a premium on originally guessing at some figure in the hope that at least one transfer of that amount or thereabouts could eventually be discovered.

No rule of thumb by which all future controversies of this kind may be easily solved can be stated. Fine lines neces-

sarily will have to be drawn sometimes in deciding whether the original allegations and the proposed amendment show on their face sufficient identity of subject matter. This does not, concededly, make for much certainty in decision but is to be preferred to amending the Bankruptcy Act by judicial fiat.

Order affirmed.