Matter of IDEAL MERCANTILE COR-
PORATION, Bankrupt.

Ideal Mercantile Corporation, Appellant.
No. 163, Docket 24298.

United States Court of Appeals
Second Circuit.

Argued Jan. 24, 1957.

Decided May 20, 1957.

Schwartz, Rudin & Duberstein, Brooklyn, N. Y. (Max Schwartz, Brooklyn, N. Y., on the brief), for appellant.

Freda Silbowitz, New York City (Michael Berman, New York City, on the brief), for petitioning creditors.

Before HINCKS, LUMBARD and WATERMAN, Circuit Judges.

WATERMAN, Circuit Judge.

The appellant, the Ideal Mercantile Corporation, appeals from an order of the District Court reversing in part an order of the Referee in this bankruptcy proceeding. The Referee had found, insofar as his findings are relevant to the disposition of this appeal, that an assignment by Ideal of certain customs refund claims was not a preferential transfer made within four months prior to the filing of an amended involuntary petition in bankruptcy. The District Court rejected this finding, and held that the assignment constituted an act of bankruptcy under the relevant provision of the Bankruptcy Act, 11 U.S.C.A. § 21, sub. a(2),[1] and by reason thereof adjudged Ideal a bankrupt.

[1] "(a) Acts of bankruptcy by a person shall consist of his having * * * (2) made or suffered a preferential transfer, as defined in subdivision a of section 96 of this title * * *" 11 U.S.C.A. § 21, sub. a(2).

Insofar as here relevant, 11 U.S.C.A. § 96, sub. a, provides:

"(1) A preference is a transfer * * of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this title, the effect of

The Ideal Mercantile Corporation was organized in August 1950, and was thereafter engaged in the business of importing and manufacturing china and ladies' ready to wear clothing. The company was insolvent on and after July 20, 1954, and it ceased doing business in August of that year. On August 2, 1954, Ideal executed and delivered to the firm of Kraditor and Haber, its attorneys and accountants, an assignment of all its claims for the refund of customs duties paid under protest to the United States. The duties were paid on scarves imported from Japan. The claims aggregated $38,447.85, and were assigned in full payment of an antecedent indebtedness of $11,491.09 allegedly due to the assignees from Ideal for accounting and legal services and a loan of approximately $2500.00. At the time of the assignment and at the time of the filing of the amended petition in bankruptcy, these claims had not been allowed by the United States, but were being prosecuted on behalf of the assignor.

On November 19, 1954, three creditors of Ideal filed an involuntary petition in bankruptcy against Ideal. The petition alleged in general terms the making of fraudulent and preferential transfers, but it did not specify dates, amounts, or transferees. Upon Ideal's motion to dismiss the petition for indefiniteness, the petitioning creditors cross-moved for, and were granted, leave to serve an amended petition. The amended petition was filed on February 11, 1955, enumerating specific acts of bankruptcy.

■ The assignment of the customs refund claims was first discovered by the petitioning creditors during an examination of an officer of Ideal conducted on December 28, 1954, under the original petition. Therefore the District Court sustained the Referee's finding that the petitioning creditors, when they filed the original petition on November 19, 1954, neither knew of, nor attempted to plead, the assignment. Accordingly, the assignment was properly regarded as a newly alleged act of bankruptcy, and was not related back to the date of the original petition for the purpose of determining whether it was preferential. Dworsky v. Alanjay Bias Binding Corp., 2 Cir., 1950, 182 F.2d 803; cf. Glint Factors, Inc., v. Schnapp, 2 Cir., 1942, 126 F.2d 207.

■ Throughout this litigation the assignment of the customs refund claims has been attacked by the petitioning creditors as preferential. But, as noted by the District Court, the assignment would not constitute a preference, and hence would not be an act of bankruptcy, if it was "perfected" on August 2, 1954, when it was made, because that date was more than four months before the filing of the amended petition. 11 U.S.C.A. §§ 21, sub. a(2), 96, sub. a(1).

■ When the assignment was made on August 2, 1954, it was "absolutely null and void" as against the Government under the Assignment of Claims Act because the customs refund claims had never been allowed by the United States and no warrant had been issued for their payment. 31 U.S.C.A. § 203.[2] The judge below pointed out, how-

which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class."

2. Insofar as here relevant, 31 U.S.C.A. § 203 provides:
"All transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration

therefor, and all powers of attorney, orders, or other authorities for receiving payment of any such claim, or of any part or share thereof, except as hereinafter provided, shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof * * *"

ever, that the bar against assignment of claims against the United States is "for the protection of the Government and not for the regulation of the equities of the claimants as between themselves," 143 F.Supp. at page 813, citing McKenzie v. Irving Trust Co., 1945, 323 U.S. 365, 369, 65 S.Ct. 405, 89 L.Ed. 305, and Goodman v. Niblack, 1881, 102 U.S. 556, 560, 26 L.Ed. 229. Thereupon he reasoned that the Assignment of Claims Act had no effect upon the validity or enforceability of an assignment of a claim against the United States as between the parties to that assignment or their successors in interest. The District Court then held that under the applicable state law, that of New York, the assignment was not perfected within the meaning of the Bankruptcy Act at the time of its making on August 2, 1954, and therefore it must be deemed to have been made immediately before the filing of the amended petition. 11 U.S.C.A. § 96, sub. a(2).[3] Accordingly, the Court held that the assignment, which was made when Ideal was insolvent, was a preferential transfer and hence an act of bankruptcy.

We affirm the District Court in its ultimate conclusion that the assignment of the custom refunds claims constituted an act of bankruptcy, but we reach that conclusion by a different course of reasoning from that of the District Court.

■■ The point at which a transfer is perfected within the meaning of the Bankruptcy Act is generally determined by reference to the applicable state law, here the law of New York. In re Morasco, 2 Cir., 1956, 233 F.2d 11, 13; see 3 Collier, Bankruptcy ¶60.39 (14th ed. 1956) and cases there collected. But in making that deter-

mination where the transfer is an alleged assignment of a claim against the United States, a New York court will first take in consideration the effect, if any, of the federal Assignment of Claims Act. See, e.g., McKenzie v. Irving Trust Co., 1944, 292 N.Y. 347, 55 N.E. 2d 192, affirmed, 1945, 323 U.S. 365, 65 S.Ct. 405, 89 L.Ed. 305; Rodd v. Kamen Products Co., 2d Dep't 1949, 275 App. Div. 855, 89 N.Y.S.2d 406.

■ The Assignment of Claims Act was first enacted in 1853, purportedly (1) "to prevent persons of influence from buying up claims against the United States, which might then be improperly urged upon officers of the Government," (2) "to prevent possible multiple payment of claims, to make unnecessary the investigation of alleged assignments, and to enable the Government to deal only with the original claimant," and (3) "to save to the United States 'defenses which it has to claims by an assignor by way of set-off, counter claim, etc., which might not be applicable to an assignee.'" United States v. Shannon, 1952, 342 U.S. 288, 291–292, 72 S.Ct. 281, 283–284, 96 L.Ed. 321; see United States v. Aetna Cas. & Surety Co., 1949, 338 U.S. 366, 373, 70 S.Ct. 207, 94 L.Ed. 171; Goodman v. Niblack, 1880, 102 U.S. 556, 560, 26 L.Ed. 229; Spofford v. Kirk, 1878, 97 U.S. 484, 490, 24 L.Ed. 1032.

In National Bank of Commerce of Seattle v. Downie, 1910, 218 U.S. 345, 31 S.Ct. 89, 54 L.Ed. 1065, the Supreme Court held that the assignment of unpaid and unallowed claims against the United States was void as against the subsequent trustee in bankruptcy of the assignor. The Court did not rest its decision on the ground that the claims had not been paid or even allowed at the time

---

3. Insofar as here relevant, 11 U.S.C.A. § 96, sub. a(2) provides:

"For the purposes of subdivision (a) and (b) of this section, a transfer of property other than real property shall be deemed to have been made or suffered at the time when it became so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings on a simple con-

tract could become superior to the rights of the transferee * * * if any transfer of other [than real] property is not so perfected against such liens by legal or equitable proceedings prior to the filing of a petition initiating a proceeding under this title, it shall be deemed to have been made immediately before the filing of the petition."

of the filing of the petition in bankruptcy, but held the purported assignment to be "absolutely null and void, and as not, in itself, passing to the appellants [creditor-assignees] any interest, present or remote, legal or equitable, in the claims transferred." National Bank of Commerce of Seattle v. Downie, supra, 218 U.S. at page 356, 31 S.Ct. at page 93.

Subsequently, however, in the case of Martin v. National Surety Co., 1937, 300 U.S. 588, 57 S.Ct. 531, 81 L.Ed. 822, the Supreme Court held that a conditional assignment by a contractor to his surety of payments due on a government contract, although not made in compliance with the Assignment of Claims Act, was enforceable against one who, with notice of the prior assignment, had loaned money to the contractor-assignor and, under power of attorney from the contractor, had collected the deferred payments from the Government and applied them to his loan. Pointing out that the Assignment of Claims Act was enacted for the protection of the Government, Mr. Justice Cardozo, speaking for the Court, stated that "the Government is not concerned to regulate the equities of claimants growing out of irregular assignments *when collection is complete and liability is ended.* * * * A transfer of the fund *after payment is perfected* is of no concern to any one except the parties to the transaction, and this quite irrespective of the time of the assignment or the manner of its making." Martin v. National Surety Co., supra, 300 U.S. at page 595, 57 S.Ct. at page 534. (Emphasis added.)

Thus, without overruling the Downie decision, the Supreme Court in Martin v. National Surety Co. limited the prior decision to assignments of *unpaid* claims against the Government, declaring that "after payments have been collected and are in the hands of the contractor or subsequent payees with notice, assignments [previously made] may be heeded, at all events in equity, if they will not frustrate the ends to which the prohibition was directed." Martin v. National Surety Co., supra, 300 U.S. at pages 596–597, 57 S.Ct. at page 535.

The Martin case has been cited subsequently by the Supreme Court, and it seems clear that an assignment of a claim against the United States is enforceable in many cases as between the parties to that assignment, or their successors in interest, after the Government has paid the claim. McKenzie v. Irving Trust Co., 1945, 323 U.S. 365, 369, 65 S. Ct. 405, 89 L.Ed. 305; cf. Central Bank v. United States, 1953, 345 U.S. 639, 642, 73 S.Ct. 917, 97 L.Ed. 1312; United States v. Munsey Trust Co., 1947, 332 U.S. 234, 237 note 1, 67 S.Ct. 1599, 91 L. Ed. 2022; see Note, 12 A.L.R.2d 460, 468–475 (1950) and cases there collected.

Here the customs refund claims had not even been allowed, much less paid, at the time of the filing of the amended petition in bankruptcy on February 11, 1955. At that date the assignment of those claims was unenforceable between the parties, and therefore could not be considered "perfected" within the meaning of the Bankruptcy Act, 11 U.S. C.A. § 96, sub. a(2). Hence the assignment must be deemed to have been made immediately before the filing of the amended petition, 11 U.S.C.A. § 96, sub. a (2); and, accordingly, it constituted an act of bankruptcy, 11 U.S.C.A. § 21, sub. a(2).

Several other contentions were urged in this appeal, but it is unnecessary to consider them in view of our finding that the assignment of the customs refund claims was a preferential transfer.

Order affirmed.