714 F.2d 213
 Robert SIEGEL, on behalf of himself and all other
stockholders of Converters Transportation, Inc., Appellee,
v.
CONVERTERS TRANSPORTATION, INC., Elk Piece Dye Works, Inc.,
Louis Sgrosso, Vincent Oltremare, Sr., and Vincent
Oltremare, Jr., Appellants.
 No. 83-7195.
 United States Court of Appeals,
Second Circuit.
 Argued June 16, 1983.
Decided Aug. 2, 1983.
 
 Howard Graff, Bloch, Graff, Danzig, Jelline & Mandel, New York City (Elaine Menlow, Bloch, Graff, Danzig, Jelline & Mandel, New York City, of counsel), for appellee.
 Murray N. Jacobson, Jacobson & Jacobson, New City, N.Y., for appellants.
 Before FRIENDLY, OAKES and CARDAMONE, Circuit Judges.
 PER CURIAM:
 
 BACKGROUND
 
 1
 This case presents the question whether an individual shareholder of a contract carrier may recover on its behalf in a derivative action the difference between freight rates paid by a shipper and those set forth in the tariff filed by the carrier with the ICC pursuant to 49 U.S.C. § 318(a), amended by 49 U.S.C. § 10761(a) (Supp. V 1981). The United States District Court for the Southern District of New York, Charles E. Stewart, Judge, in two separate memorandum decisions, rejected the defendants' estoppel defense and granted summary judgment as to liability on the plaintiff's timely claims. We affirm.
 
 
 2
 The named plaintiff in this action, Robert Siegel, was a shareholder and President of Converters Transportation (Converters), a New York corporation operating as a contract carrier as defined in 49 U.S.C. § 303(a)(15), amended by 49 U.S.C. § 10102(5), (13) (Supp. V 1981). Converters was formed in 1969, apparently for the sole purpose of providing transportation services to the defendant Elk Piece Dye Works (Elk), a corporation that dyes and finishes "piece goods" for the textile industry. Although legally separate from Elk, one-half of Converters' stock was held by Vincent Oltremare, Jr. and Joseph Scancarello, who both represented the interests of Elk. The other one-half was held by plaintiff Siegel. Converters also agreed to pay defendants Vincent Oltremare, Sr. and Louis Sgrosso, both principals of Elk, $12,500 annually as "commissions" for obtaining Elk's trucking business.
 
 
 3
 The appellees argued that the payments were illegal rebates. The amended complaint sought both recovery of the commissions and compensation for payments for trucking services rendered Elk by Converters from May 30, 1975 to March 21, 1977. Elk argues that Converters should be estopped from recovering because, as Judge Stewart found, "[t]here is uncontroverted evidence that Siegel knew, ratified and participated in the alleged illegal payments." Converters argues that the "commissions" agreement was "attributable solely to Elk providing it with customers--a bounty for its lifeblood." In the alternative, Elk argues that recovery for at least some of the period set forth in Converters' amended complaint is barred by the statute of limitations.
 
 DISCUSSION
 A. Estoppel
 
 4
 Elk's estoppel argument--based on the equitable maxim that a party ought not to profit from his own wrongdoing--runs contrary to well settled case law establishing essentially strict liability for any difference between the rates paid by a shipper and the tariff filed by the carrier. In short, "[u]nder the Interstate Commerce Act, the rate of the carrier duly filed is the only lawful charge." Louisville & Nashville R.R. v. Maxwell, 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853 (1915). The Court in Louisville & Nashville recognized that "[t]his rule is undeniably strict and it obviously may work hardship in some cases" but concluded that strict liability "embodies the policy which has been adopted by Congress in the regulation of interstate commerce in order to prevent unjust discrimination." Id. Any number of recent cases from this and other circuits confirms the proposition that an estoppel defense is simply unavailable under the Act. See, e.g., Fry Trucking Co. v. Shenandoah Quarry, Inc., 628 F.2d 1360, 1361-63 (D.C.Cir.1980); Illinois Central Gulf R.R. v. Golden Triangle Wholesale Gas Co., 586 F.2d 588, 592 (5th Cir.1978); Nyad Motor Freight, Inc. v. W.T. Grant Co., 486 F.2d 1112, 1114 (2d Cir.1973) ("a common carrier may, despite its own complicity, recover any illegal differential between its filed rates and the actual charges made"); Bowser and Campbell v. Knox Glass, Inc., 390 F.2d 193, 194-97 (3d Cir.), cert. denied, 392 U.S. 907, 88 S.Ct. 2061, 20 L.Ed.2d 1365 (1968).
 
 
 5
 Bangor Punta Operations, Inc. v. Bangor & Aroostook R.R., 417 U.S. 703, 94 S.Ct. 2578, 41 L.Ed.2d 418 (1974), the case Elk relies upon most, does not call for a different result. In Bangor Punta the Court held that a corporation could not maintain an action for waste of corporate assets and mismanagement against the former owners of a corporation it had acquired at what was conceded to be a fair price. Elk argues that the decision "recognize[s] the principle that a stockholder may not maintain an action to recover for wrongful conduct if that stockholder acquiesced in, participated in, or ratified the wrongdoing complained of." We do not believe that Bangor Punta must--or should--be read so broadly. The Court's decision ultimately turned on its view that the plaintiff in Bangor Punta, having paid a fair price for its shares, suffered no injury as a result of any earlier mismanagement of the acquired corporation. 417 U.S. at 711, 94 S.Ct. at 2583. Thus Bangor Punta was not a case where recovery was denied under either an "unclean hands" or "in pari delicto" rationale. See Memorex Corp. v. International Business Machines Corp., 555 F.2d 1379 (9th Cir.1977).
 
 B. Statute of limitations
 
 6
 Siegel originally filed suit on his own behalf on June 10, 1977. On September 15, 1978, Judge Stewart held that, under New York law, Siegel was not entitled to maintain the action and dismissed without prejudice. Siegel then filed a verified amended complaint as a derivative suit on October 30, 1978. Although Siegel's first complaint sought compensation only for shipments made between April 3, 1976 and March 21, 1977, the time period encompassed by the amended complaint ran from May 30, 1975 to March 21, 1977. Although it is clear that, under the applicable three year statute of limitations, 49 U.S.C. § 304a, amended by 49 U.S.C. § 11706 (Supp. V 1981), a claim relative to shipments dating back to May 30, 1975 would have been timely when the first complaint was filed on June 10, 1977, Elk contends that the amended complaint's alteration of the period for which damages were sought cannot "relate back" to the filing of the original complaint under Fed.R.Civ.P. 15(c).
 
 
 7
 The text of Rule 15 makes explicit Congress's intent that leave to amend a complaint "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). The purpose of Rule 15 "is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." 6 C. Wright & A. Miller, Federal Practice and Procedure, § 1471, at 359 (1971). To this end Fed.R.Civ.P. 15(c) provides in part that:
 
 
 8
 Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.
 
 
 9
 We held over forty years ago that Rule 15(c) was to be liberally construed, particularly where an amendment does not "allege a new cause of action but merely ... make[s] defective allegations more definite and precise." Glint Factors, Inc. v. Schnapp, 126 F.2d 207, 209 (2d Cir.1942). See also Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).
 
 
 10
 In this case the initial complaint made it clear that Converters sought recovery for all unpaid shipping services it had rendered Elks and all the "commissions" paid to the various defendants. The "conduct" or "transaction" in question was therefore the agreement to violate the tariff filed with the ICC by means of "free" shipments and "commissions." Cf. Tiller v. Atlantic Coast Line R.R., 323 U.S. 574, 580-81, 65 S.Ct. 421, 424, 89 L.Ed. 465 (1945) ("The cause of action now, as it was in the beginning, is the same .... There is no reason to apply a statute of limitations when, as here, the respondent has had notice from the beginning that petitioner was trying to enforce a claim against it because of the events [alleged in the original complaint]"); see also Tabacalera Cubana, S.A. v. Faber, Coe & Gregg, Inc., 379 F.Supp. 772, 775-76 (S.D.N.Y.1974); Brennan v. Tar Heel Home Supply, Inc., 62 F.R.D. 190 (D.N.C.1974). To allow Elk to interpose a statute of limitations defense on the theory that each shipment represented a separate "occurrence" for the purpose of Rule 15(c) would ignore the fact that the plaintiff was not required under the Rules to plead each shipment with specificity, and did not do so. Such an approach would also defeat the rationale of Rule 15 which is, quite simply, "to ameliorate the effect of the statute of limitations." 6 C. Wright & A. Miller, Federal Practice and Procedure § 1497, at 495 (1971) (footnote omitted). See also id. § 1496, at 482-83. Nor is there any possibility that Elk was prejudiced here. Any reliance on the statute of limitations as to shipments earlier than those made within the period specified in the original complaint would have been wholly unjustified because a "suit warns the defendant to collect and preserve ... evidence in reference to it. When a suit is filed in a federal court under the Rules, the defendant knows that the whole transaction described in it will be fully sifted, by amendment if need be." Barthel v. Stamm, 145 F.2d 487, 491 (5th Cir.1944), cert. denied, 324 U.S. 878, 65 S.Ct. 1026, 89 L.Ed. 1430 (1945). The gist of both the original suit and the amended complaint was the unlawful agreement to pay lower freight charges and commissions, and its continuing performance, not a series of agreements as to unrelated shipments.
 
 
 11
 Judgment affirmed.