### In re KAM KUO SEAFOOD CORP., f/k/a Aco Seafood Corp., Debtor.

John S. PEREIRA, as Trustee in Bankruptcy of Kam Kuo Seafood Corp., f/k/a Aco Seafood Corp., Plaintiff,

v.

### HONG KONG & SHANGHAI BANKING CORP., Defendant.

Bankruptcy No. 83 B 11836.
Adv. No. 86–5090A.

United States Bankruptcy Court, S.D. New York.

Nov. 12, 1986.

---

**6.** An application for attorney fees in the amount of $1,000.00 is presently pending.

Robert P. Herzog, New York City, for trustee.

Cleary, Gottlieb, Steen & Hamilton by Lawrence B. Friedman, New York City, for defendant.

HOWARD C. BUSCHMAN, III, Bankruptcy Judge.

The Trustee, by motion, seeks an order permitting him to file an amended complaint asserting additional preference claims barred by the two year statute of limitations provided by § 546(a) of the Bankruptcy Code, 11 U.S.C. § 546(a) (1984)

(the "Code"). Hong Kong & Shanghai Banking Corp. (the "defendant") opposes the motion, asserting that the additional claims may not relate back under Rule 15(c) of the Federal Rules of Civil Procedure, Fed.R.Civ.P. 15(c), made applicable to these proceedings by Rule 7015 of the Rules of Bankruptcy Procedure, Bankr.R. Proc. 7015.

An involuntary bankruptcy petition was filed December 28, 1983 against Kam Kuo Seafood Corp. ("the Debtor") and an order for relief was entered. John S. Pereira was appointed Trustee in bankruptcy on January 31, 1984 by order of this Court. On January 30, 1986, one day before the expiration of the two year period provided by § 546(a) of the Code, the Trustee filed a preference action. His complaint alleged that, on or about October 21, 1983, the Debtor transferred to the defendant $150,-000 by cashier's check drawn on another bank in partial payment of a corporate debt owed the defendant by the Debtor, and that this payment constituted a voidable preference under § 547 of the Code. The amended complaint would allege that the Debtor has made seven additional transfers, aggregating $161,535.68, from October 5, 1983 to October 21, 1983, in payment of the same debt. These transactions are alleged to have consisted of four credit memoranda deducting sums from the Debtor's accounts at the defendant bank and three checks drawn on that account.

At issue before us is whether the averments of a proposed amended complaint, asserting preferential payments in addition to the one originally asserted, may relate back to the filing of the original complaint. If not, the claims are concededly barred by § 546(a) of the Code and the motion should not be granted since there would be no purpose to the amendment.

Rule 15(c) provides for relation back of a claim if it "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." It has thus been established that an amended complaint will relate back notwithstanding the bar of the statute of limitations if it

merely adds a new legal ground for relief, *Tiller v. Atlantic Coast Line Railroad Co.*, 323 U.S. 574, 581, 65 S.Ct. 421, 424–25, 89 L.Ed. 465 (1945), changes the date and location of the transaction alleged, *Kelcey v. Tankers Co.*, 217 F.2d 541, 543 (2d Cir. 1954); *In re Ostrer*, 216 F.Supp. 133 (E.D. N.Y.1963), or spells out the details of the transaction originally alleged, *Glint Factors, Inc. v. Schnapp*, 126 F.2d 207 (2d Cir.1942); *Green v. Wolf Corp.*, 50 F.R.D. 220 (S.D.N.Y.1970). An amendment merely increasing the *ad damnum* clause also will relate back. 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1497, at 493–94 (1971).

Considerable difficulty arises when the courts are confronted with an original complaint which pleads a transaction or several transactions and the amendment seeks to add transactions similar to those originally pleaded. This issue differs markedly from cases where only the terms of the statute were alleged in the complaint. In such cases, the original pleading has been held to be so lacking in specificity that there is nothing to which the amendment can relate back. *In re Ideal Mercantile Corp.*, 244 F.2d 828, 830 (2d Cir.), *cert. denied*, 355 U.S. 856, 78 S.Ct. 84, 2 L.Ed.2d 63 (1957); *In re Robitaille Farms, Inc.*, 2 B.R. 598, 600 (Bankr.D.Mass.1980); *In re Peachtree Warehouse Distributors, Inc.*, 1 B.R. 706, 708 (Bankr.N.D.Ga.1979). *But see In re J.P. Linahan, Inc.*, 133 F.2d 688, 690 (2d Cir.1943).

In *Dworsky v. Alanjay Bias Binding Corp.*, 182 F.2d 803 (2d Cir.1950), an involuntary bankruptcy petition alleged as an act of bankruptcy the making of preference payments in the amount of $1,000 to unknown creditors. With leave of the court, an amended petition was filed. The petition listed several specific payments, each one made within four months of the original petition as required by § 3(b) of the former Bankruptcy Act, 11 U.S.C. § 21(b) (1898) (repealed), but more than four months before the date of the amendment. In holding that the amendment did not relate back, the Second Circuit stated that "to hold otherwise would amount to amend-

ing Section 3, sub. b of the Bankruptcy Act," since the passage of time had precluded finding the preferences to be acts of bankruptcy. *Id.* at 805. It added:

> [W]e pay no attention to what the [petitioner] may have had in mind at the time of filing the original petition except in so far as the language used therein indicates it. Instead, we look only to the petition and proposed amendment to determine whether, when considered together, they disclose ... that in the original petition the [petitioner] set forth, or attempted to set forth, the same preferential transfer or transfers ultimately relied upon.

*Ibid.*

■ Consequently, if the original complaint indicates an intention to pursue all transactions, the adding of such transactions will relate back. *Siegel v. Converters Transportation, Inc.*, 714 F.2d 213 (2d Cir. 1983). In *Siegel*, the original complaint claimed that rebates made on shipments during a one year period were illegal under the Interstate Commerce Act. The amended complaint added a year to the period. In holding that the additional transactions alleged in the amended complaint related back notwithstanding the bar of the statute of limitations, the court stated that the original complaint "made it clear" that recovery was sought for all rebates. *Id.* at 216. Thus, "[t]he 'conduct' or 'transaction' in question was ... the agreement to violate the tariff filed with the ICC by means of 'free' shipments and 'commissions'," as opposed to "a series of agreements as to unrelated shipments." *Ibid.* The court gained further support from the reasoning that in such a case there was no need to plead each shipment and rejected the notion that a defendant, in such a case, would be justified in relying only on the protection of the statute of limitations:

> Nor is there any possibility that [defendant] was prejudiced here. Any reliance on the statute of limitations as to shipments earlier than those made within the period specified in the original complaint

would have been wholly unjustified because a 'suit warns the defendant to collect and preserve ... evidence in reference to it. When a suit is filed in a federal court under the Rules, the defendant knows that the whole transaction described in it will be fully sifted, by amendment if need be.' *Barthel v. Stamm,* 145 F.2d 487, 491 (5th Cir.1944), *cert. denied,* 324 U.S. 878, 65 S.Ct. 1026, 89 L.Ed. 1430 (1945).

*Ibid.*

■ Conversely, where transactions are truly separate, claims based on transactions in addition to those originally pleaded do not relate back where they are not part of the conduct or occurrence originally pleaded. *Marine Midland Bank v. Keplinger & Associates, Inc.,* 94 F.R.D. 101 (S.D.N.Y.1982). In *Keplinger,* the plaintiff bank brought an action in negligence, misrepresentation, and contract against a geologist it had engaged in connection with the valuation of the assets of a potential borrower. The plaintiff first alleged that it had made continuous financing available to the customer in reliance on the continuing representations of the defendant. After much discovery, it sought leave to file an amended complaint enlarging the time period of the misrepresentation by two years. In denying leave to amend, the court found that the plaintiff had separately engaged the defendant during the second period and that the engagement was unrelated to the work earlier performed by the defendant. *Id.* at 104.

Although the plaintiff's amended complaint in *Keplinger* alleged a breach of duty by the defendant in the first engagement and continuing misrepresentations which defendant continued into the second engagement, the court held that the amendment was barred by the statute of limitations and, since it involved different conduct, could not relate back. *Ibid.; see also Textile Museum v. F. Eberstadt & Co. Inc.,* 453 F.Supp. 72, 75 (S.D.N.Y.1978) (amended complaint alleging that investment service should not have recommended purchase in 1969 does not relate back to original complaint alleging that service should have recommended sale in 1974); *Holdridge v. Hayer-Schulte Corp.,* 440 F.Supp. 1088, 1094 (N.D.N.Y.1977) (amendment adding a new set of operational facts does not relate back).

Such reasoning regarding the "conduct" provision of Rule 15(c), however, was not followed in *Tabacalera Cubana, S.A. v. Faber, Coe & Gregg, Inc.,* 379 F.Supp. 772 (S.D.N.Y.1974). There the plaintiff, both prior to and after being taken over by the Cuban government, shipped cigars to defendant. The Cuban government timely sued for payment of the balance due in federal court. Tabacalera's original American owners also sued for the same balance in state court. These two actions were consolidated in federal court and the successor in interest to the original owners was added as a party plaintiff and ordered to file a pleading asserting any claim which it may have had. It did so, asserting the claims of the original owner and, in addition, sought recovery for the price of any additional shipments of Tabacalera cigars to the defendant. Subsequent discovery revealed that defendant had issued to the Cuban government some $50,000 in checks covering shipments made prior to the Cuban takeover. Noting that all parties had stipulated that the timely state court complaint had been effectively substituted by the new pleading, the court held the new pleading to be an amendable complaint that related back under Rule 15(c). It ruled that "the additional claims set forth in the amendment arose out of the same course of conduct, transactions and occurrences set forth in the original ... complaint. That complaint sought payment for shipments ... which were part of the regular course of dealing...." 379 F.Supp. at 776. From this it reasoned that the defendant had "notice of the general fact situation out of which the claim asserted in the amendment arose," and thus suffered no prejudice since the transactions were reflected on its books and records. *Id.* at 776–77.

In *Oliner v. McBride's Industries*, 106 F.R.D. 9 (S.D.N.Y.1985), however, Judge Charles H. Tenney adopted a more stringent test. He held that a portion of an amended complaint alleging a conspiracy to divert tangible assets from a debtor-in-possession could relate back to the filing of an original complaint alleging a conspiracy to divert other assets, but that a portion asserting breach of contract would not relate back. As set forth in *Oliner*, the test is "whether there is a common core of operative facts linking the amendments and the original complaint." *Id.* at 12. Accordingly, Judge Tenney concluded that "the proposed diversion claim is a natural offshoot of the basic scheme to divert assets which was set forth in the first amended complaint," as to which "[d]efendant was, or should have been on notice...." *Id.* at 13. That basic scheme, however, did not "foreshadow" the breach of contract claim and thus its assertion was not permitted. *Id.* at 14.

In view of *Siegel* and its progeny, defendant's reliance on *Dworsky* for a *per se* rule barring the additional transactions under Rule 15(c), lacks merit. Similarly, plaintiff's assertion that all similar transactions may relate back is also without merit. Such an assertion does not account for the common core required in *Siegel, Oliner* and *Keplinger*. While *Tabacalera* stands seemingly alone in the breadth of its language, it can be harmonized with these cases. *Tabacalera*, as originally pleaded, involved the balance due on a series of continuous shipments to an importer. The amendment added to this series and thus arose out of the same common core of operative facts and was not inconsistent. *Cf. Oliner*, 106 F.R.D. at 12–13. The amendment did not, unlike the breach of contract claim in *Oliner* and the separate engagement claim in *Keplinger*, arise from "conduct which is different and a transaction which is separate from that alleged in

the prior complaint." *Oliner*, 106 F.R.D. at 14.

█ Here the original complaint asserts no such continuing close relationship or conduct from which both the originally pleaded and subsequently pleaded transactions sprung. All that appears is that defendant had a banking relationship with the Debtor, claims a security interest in its assets and apparently received payments during the 90 day preference period. It is not alleged that defendant was the Debtor's principal bank or that the transactions arose out of the same common core. All that is pleaded is the statutory language of § 547(b) of the Bankruptcy Code and that defendant received a cashier's check drawn on another bank. The additional transactions are different in kind, consisting of charges by defendant to the Debtor's account and checks drawn on that account.

Thus, this is a case where it is not at all clear that the defendant knew or should have known, notwithstanding a plaintiff's ability to amend its complaint under Rule 15, that the litigation would involve all payments during the 90 day preference period pleaded in the complaint from the plaintiff's pleading of only one of them. *Cf. Siegel*, 714 F.2d at 216. Nor is this a case involving a scheme common to both sets of transactions. Indeed, none was pleaded. *Cf. Oliner*, 106 F.R.D. at 13. Rather, this is a case involving separate payments that were different in kind. That they are all labelled preferential is of no significance. They are still separate and do not arise out of the same conduct, for the elements of § 547(b) of the Code must be satisfied as to each of them. Because of those differences, the defendant cannot, on this record, be charged with notice that the litigation involved the other transactions.

Accordingly, it cannot be said that the additional claims arose from the same conduct, transaction, or occurrence originally pleaded as Rule 15(c) requires.[1] Since all

---

1. The Trustee now strenuously claims that he did not discover the additional payments until receiving documents from the defendant. The defendant, just as strenuously, denies that assertion, claiming that the documents do not embrace those transactions. Discovery is, of course, relevant to Rule 15(a). Defendant makes no claim that the amendment is not

that would be accomplished is to assert transactions barred by § 546(a) which may not relate back under Rule 15(c), the motion for leave to serve an amended complaint must be, and hereby is, denied.

IT IS SO ORDERED.

permissible under Rule 15(a). As to relating back under Rule 15(c), the *Dworsky* court established that the state of plaintiff's mind is irrelevant. 182 F.2d at 805. Subsequent decisions have not changed that ruling. Such an inquiry would overly prolong such motions and is irrelevant to the grounds set forth in Rule 15(c).